UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-20748

SERGIO PEREZ,

     Plaintiff,

vs.

CITY OF OPA-LOCKA, and
STEVEN BARREIRA,

     Defendants.

_____/

## **COMPLAINT**

Plaintiff, Sergio Perez, brings this action to address the conduct by Defendant, City of Opa-Locka and Steven Barreira, as follows:

### *Introduction*

1.    **Plaintiff, Sergio Perez**, brings this lawsuit against the City of Opa-Locka and Steven Barreira to address their disregard for due process, financial mismanagement, and retaliatory actions that resulted in significant damages.

### *Parties, Jurisdiction, and Venue*

2.    **Plaintiff, Sergio Perez ("Capt. Perez")**, was at all times material a resident of this District, was a Captain with the City of Opa-Locka Police Department, is currently a Sergeant with the City of Opa-Locka Police Department, and he is *sui juris*.

3.    **Defendant, City of Opa-Locka ("City")**, is a municipality within Miami-Dade County, Florida, and it is *sui juris*.

4.    **Defendant, Steven Barreira ("Chief Barreira")**, was at all times material a

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

resident of this District, the Chief of the Opa-Locka Police Department, *sui juris*, over 18 years old, and acting within the course and scope of his employment with the City.

5.      The City is well known for its financial troubles, infighting amongst City officials, and problems with its police department.

6.      This Court has original jurisdiction over Capt. Perez's claims that arise under federal law and supplemental / pendent jurisdiction over his related state law claim(s).

7.      Venue is proper pursuant to 28 U.S.C. §1391(b)(ii) because the City is located within this District, because the City employed Capt. Perez in this District, and because most of the actions complained of occurred within this District.

### *Background Facts*

8.      Capt. Perez has worked as an officer with the City since March 8, 2008.

9.      Since his hiring, Capt. Perez has worked tirelessly for the City; his dedication, education, experience, and service resulted in his rising up through the ranks of the Police Department to the point that he held the position of Administrative Captain.

10.     Capt. Perez has a Master's Degree from Saint Thomas University

11.     Capt. Perez also worked as an adjunct professor at Saint Thomas University.

12.     Capt. Perez is one of only two officers in the City's history to have graduated from Northwestern University's School of Police Staff & Command.

13.     Michael Steel held the rank of Sergeant with the City's Police Department in September of 2021, and so is hereafter referred to as then-Sergeant Steel.

14.     All conditions precedent occurred, were satisfied, and/or were waived.

15.     Capt. Perez hired the undersigned counsel and agreed to pay a reasonable fee for

all services rendered herein.

## COUNT I – 42 U.S.C. §1983 PROCEDURAL DUE PROCESS VIOLATION
### AGAINST THE CITY OF OPA-LOCKA

Plaintiff, Sergio Perez, reincorporates and re-alleges all preceding as though set forth fully herein and further alleges as follows:

16.     Then-Sergeant Steel has a checkered history of service as a police officer.

17.     Then-Sergeant Steel's first job in law enforcement was with the City of Margate Police Department, a job from which he resigned on March 1, 2004, while he was under investigation for failing to properly disclose his citizenship status on his application for employment.

18.     Then-Sergeant Steel's personnel file with the City includes complaints detailing dishonesty in reporting or recording events, documented concerns about his retaliating against other officers, and his disregard for established policies and procedures.

19.     The City's Police Department conducted an Internal Affairs Investigation involving whether then-Sergeant Steel was dishonest in his application for employment by failing to disclose that he was previously charged with criminal activity in Alachua County, Florida, even though he engaged in a process to expunge his prior criminal record, and both the Chief of Police Cheryl Caison and Deputy Chief of Police Anthony J. Sanchez recommended terminating then-Sergeant Steel's employment.

20.     The City's Police Department conducted another Internal Affairs Investigation into whether then-Sergeant Steel, who at the time was the Internal Affairs Commander, had contacted three officers who had been Relieved of Duty in an effort to solicit them to conspire against the Deputy Chief of Police and both the Chief of Police Cheryl Caison and Deputy Chief of Police Anthony J. Sanchez recommended terminating then-Sergeant Steel's employment.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

21.     Then-Sergeant Steel filed a grievance with the City resulting in the City entering into a Conditional Mutual General Release with then-Sergeant Steel, pursuant to which it agreed to either withdraw or find as unfounded the Internal Affairs investigation concerning his background.

22.     Seven different Police Officers employed the City's Police Department reported that then-Sergeant Steel would retaliate against them for speaking up to him, including by denying them vacation request, verbal counseling, and other means, and that he was not fit as a leader, resulting in the Assistant Chief of Police Sharon Gallimore recommending that then-Sergeant Steel be removed from any supervisory position in November 2019.

23.     On September 1, 2021, Capt. Perez discharged a Taser 7 with a blue training cartridge that <u>does not</u> result in the discharge of an electrical current and that is covered with a "Velcro" hook fabric[1] (known as a HALT – Hook and Loop Training cartridge) in the vicinity of then-Sergeant Steel.

24.     Then-Sergeant Steel did not report immediately thereafter the incident, did not create any documentation to indicate that he was "injured" while on the job, and did not make a complaint to the Internal Affairs department for the City's Police Department to indicate that the discharge of the training Taser 7 "round" was inappropriate or caused him any personal injury.

25.     Then-Sergeant Steel was required to report the incident in writing and to receive treatment through the City's workers' compensation scheme, if he in fact suffered an injury at work, but he instead did not do either.

---

[1]     The hook fabric is one part of the Velcro adhesion mechanism, with the other part being the loop fabric – the hook fabric sticks to the loop fabric.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

26.     If Capt. Perez struck then-Sergeant Steel with the Taser 7's training Velcro round, then-Sergeant Steel was required to immediately report the incident in writing to the City's Police Department so that an Internal Affairs investigation could be initiated promptly.

27.     It was not until an anonymous email was sent on September 6, 2021 from opalockapolicechannel@protonmail.com to City officials, the Florida Department of Law Enforcement, and others, that then-Sergeant Steel mentioned the incident involving Capt. Perez to anyone.

28.     The City Manager at that time, John Pate, directed Chief Barreira to initiate an internal affairs investigation into the incident described in the email.

29.     Chief Barreira did not thereafter immediately initiate an internal affairs investigation; instead, he called then-Sergeant Steel on September 7, 2021, to coordinate a meeting to occur outside of the confines of the City of Opa-Locka Police Department to discuss the situation surreptitiously.

30.     As the ultimate decisionmaker on any Internal Affairs Investigation, the request by Chief Barreira to meet with then-Sergeant Steel outside of the confines of the City of Opa-Locka Police Department was not only a deviation from the required chain of command for an Internal Affairs investigation, but it was against the Standard Operating Procedures for the City of Opa-Locka's Police Department, and it was against the directive from the City Manager; however, it was standard practice for the City's Police Department to ignore its own policies and procedures in regard to personnel matters.

31.     Chief Barreira met with then-Sergeant Steel to discuss the September 1, 2021 incident involving Capt. Perez and then-Sergeant Steel outside of the confines of the City's Police

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Department without any recording of the meeting, without any documentation to memorialize the meeting or the discussions conducted, and before the City of Opa-Locka Police Department's Internal Affairs investigator interviewed then-Sergeant Steel.

32.     Several days later, City Manager Pate announced at the City Commission hearing held on September 8, 2021, that he would wait for an investigation to conclude before taking any actions involving Capt. Perez or Capt. Perez's employment.

33.     Then-Sergeant Steel retained an attorney, who on September 9, 2021, notified the City of his intent to sue the City.

34.     Chief Barreira nonetheless ignored not only that directive from City Manager Pate but also the City's established procedures when he suspended Capt. Perez as of September 10, 2022, before any investigation involving Capt. Perez had concluded.

35.     Meanwhile, then-Sergeant became the subject of an Internal Affairs investigation for violating several departmental policies in September of 2021.

36.     The City's custom and practice, when it addressed similar situations involving alleged misconduct involving Sgt. Hugo Alvarado and Sgt. Jack Pelaez, was to not suspend them; however, it suspended Capt. Perez with pay, without any investigation concluding, and without basis.

37.     When Dennis Jackson, II, assumed the position of Interim Chief of Police, he reviewed the facts at hand, determined that there was no legitimate basis to take any adverse employment actions against Capt. Perez, and immediately reinstated Capt. Perez to duty in the position of Captain with the Police Department on November 15, 2021.

38.     The City fired City Manager Pate on January 13, 2022.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

39.     The City next demoted Capt. Perez to the rank of Sergeant on January 17, 2022, resulting in a significant decrease in Capt. Perez's pay, shortly before the City promoted then-Sergeant Steel to Captain and immediately made him Interim Chief, notwithstanding the open Internal Affairs investigation involving then-Sergeant Steel.

40.     Promptly after promoting then-Sergeant Steel to Interim Chief of Police, Capt. Perez was re-assigned from working at a desk in the Code Enforcement division to riding around the City of Opa-Locka in a Code Enforcement vehicle, in civilian clothing, without his badge or service weapon, so that he could enforce parking violations.

41.     Although he remains a Sergeant in the City's Police Department, the City ignored its established rules, regulations, policies, and/or procedures in demoting Capt. Perez, in depriving him of his badge and service weapon, in reducing his pay, and in changing his job duties, all while remaining a Sergeant in the Police Department.

42.     The City also ignored its established rules, regulations, policies, and/or procedures in having Capt. Perez work as a Code Enforcement Officer while riding in a City of Opa-Locka Code Enforcement vehicle driven by another Officer while still a Sergeant in the Police Department, albeit without the use of his City-issued service weapon.

43.     The City failed to conduct any hearing prior to taking the aforementioned actions involving Capt. Perez.

44.     The City failed to afford Capt. Perez any opportunity to conduct a hearing prior to taking the aforementioned actions against Capt. Perez.

45.     Had the City conducted an investigation, it would have learned that Capt. Perez did not aim or fire a Taser 7 training / Velcro round at then-Sergeant Steel.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

46.     Kent C. Jurney, CPP, CPE, MSM, who conducted a polygraph examination of Capt. Perez on December 29, 2021, and concluded that Capt. Perez truthfully responded that he did not aim, did not intend to hit, and did not intentionally try to shoot then-Sergeant Steel with the Taser 7's training / Velcro round.

47.     The City's de-facto custom and policy is to ignore its own policies and procedures in disciplining the members of its Police Department to the detriment of its police officers in general and Capt. Perez in this instance.

48.     The City knew and/or reasonably should have known about its deliberate indifference to due process rights of the members of its Police Department in general, and to Capt. Perez in particular, based on its pattern and practice of ignoring its established policies and procedures after being subjected to numerous demand letters, lawsuits, arbitrations, and internal memoranda regarding same.

49.     The final policymakers – Chief Barreira and then-Sergeant Steel – carried out these unofficial City policies of depriving Police Officers of their due process rights as part of an unofficial policy of the City.

50.     Capt. Perez has no adequate remedy under Florida law for the deprivation of his rights to cure the lack of an available process, as set forth above.

51.     The City failed to include or implement any specific policy that would entitle employees such as and including Capt. Perez, to any right to a name clearing hearing prior to (or after) a demotion and reduction in pay. Consequently, its policy and custom remain to deprive employees like and including Capt. Perez of a name clearing hearing.

52.     At no time prior to January 17, 2022, did the City permit Capt. Perez to present

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

evidence or offer any response to any accusation against him nor to participate in any process regarding his demotion and reduction in pay, let alone to provide him with a name clearing hearing.

53.    The City provided Capt. Perez no meaningful opportunity for a name clearing hearing before demoting him, as it instead demoted and demeaned him without due process, and a post-demotion hearing would be a meaningless charade.

54.    The City identified no reason(s) why it could or did not conduct a pre-determination hearing before taking any adverse employment actions against Capt. Perez.

55.    Capt. Perez had no adequate remedy at law to address the aforesaid conduct by the City.

56.    As a direct and proximate result of the City's actions as aforesaid, Capt. Perez suffered damages in the form of the above-described demotion, lost pay, decreased contributions to his pension, he suffered emotional distress, a blow to his reputation, a damaged ability to obtain employment in a similar capacity, and other damages.

WHEREFORE Plaintiff, Sergio Perez, demands the entry of a judgment in his favor and against Defendant, City of Opa-Locka, after trial by jury, by determining and declaring that the City violated Capt. Perez's due process rights, awarding damages, including to his reputation, lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel file, attorneys' fees, costs, and all interest allowed by law.

### COUNT II – 42 U.S.C. §1983 FIRST AMENDMENT VIOLATION
### AGAINST THE CITY OF OPA-LOCKA

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Plaintiff, Sergio Perez, reincorporates and re-alleges paragraphs 1 through 15 as though set forth fully herein and further alleges as follows:

57.     The use or misuse of public funding by a municipality and its agencies constitutes a matter of public concern.

58.     Police governance also is a matter of public concern.

59.     Capt. Perez's job duties did not include financial management of the City's Police Department, nor any sub-part thereof.

60.     As a City that remains under financial oversight due its history of financial mismanagement, Capt. Perez was concerned about the waste of public funds as a citizen and for the tax-paying business and residents of the City who rely on the judicious use of precious financial resources.

61.     In June 2021, Capt. Perez began complaining to Chief Barreira by email that the City was wasting approximately $1,200 per month on storing contraband that was seized at the flea market more than 90 days earlier.

62.     Capt. Perez complained that the City was legally allowed and obligated to advertise the seized property so that it could not only sell the seized property at auction, but so that the City could cease having to waste precious financial resources of the City by paying approximately $1,200 monthly storage fees that were completely avoidable.

63.     Chief Barreira did not take any actions to avoid incurring the approximately $1,200 monthly storage fees, and he – on behalf of the City –retaliated against Capt. Perez by assigning to him additional job duties that were traditionally performed by a Sergeant less than a week after Capt. Perez complained about the wasting of public funds, instead of re-assigning those job duties

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

from one Sergeant to another Sergeant.

64.     The City continues to pay this approximately $1,200 monthly storage fee and has not completed auctioning the contraband it pays to store.

65.     The City previously purchased a K-9, paid to upfit a police vehicle, paid for equipment for the K-9, and then paid to train a police officer employed by the City and this K-9 unit.

66.     The City also had a policy in place relating to the use of a K-9 within its Police Department.

67.     The City paid a significant amount of money to purchase the K-9, to upfit the police vehicle, for equipment for the K-9, and to train this particular police officer.

68.     In July 2021, Chief Barreira directed that the K-9 to not be placed into service until after a new policy was put into place, resulting in the waste of taxpayer funds for over a week.

69.     Chief Barreira indicated that he wanted to contract with Lexipol to provide services in connection with updating and implementing the City of Opa-Locka Police Department's policies and procedures.

70.     Chief Barreira received a proposal from Lexipol in which it indicated that the cost for the service exceeded $53,000, with subsequent annual subscription costs.

71.     Capt. Perez objected to Chief Barreira's intent to contract with Lexipol as an unnecessary expenditure.

72.     Chief Barreira disregarded the City's procurement process, policies, and established procedures when he signed an agreement with Lexipol to commit the City to pay over $53,000 for this service, even though the City has not utilized Lexipol to this date.

11

73.     Although the City required for expenditures of $53,000 to be approved by the City's Commission, no such approval was provided for the Lexipol contract.

74.     Chief Barreira nonetheless signed the Lexipol contract on behalf of the City.

75.     Even though it did not implicate his position with the Police Department:

a)      Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when he brought up to Chief Barreira how the City was wasting approximately $1,200 per month on storing contraband seized from the flea market more than 90 days before;

b)      Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when he brought up to Chief Barreira how the refusal to utilize the newly purchased K-9 amounted to a waste of public funds because the money had already been spent on purchasing the K-9, on upfitting a police vehicle, on purchasing equipment for the K-9, and on training the particular police officer; and

c)      Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when he brought up to Chief Barreira how spending money Lexipol would amount to a waste of public funds.

76.     The City responded by taking adverse employment actions against Capt. Perez starting on September 10, 2021, when he was placed on administrative leave, when he was later

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

demoted from Captain to Sergeant, when he suffered a significant decrease in pay, when it relegated him to a Code Enforcement position, and when it finally required him to ride in a Code Enforcement vehicle wearing civilian clothing to enforce parking violations.

77.     The City took these adverse employment actions against Capt. Perez as a direct and proximate result of his complaints about gross financial mismanagement / waste of public funds.

78.     The City has a history of retaliating against those who speak out about gross financial mismanagement / waste of public funds.

79.     The City's retaliatory actions against Capt. Perez were different than actions it could take and/or did take against other members of the public at large.

80.     As a direct and proximate result of the City's taking adverse employment actions described herein, Capt. Perez lost past and future wages, benefits, and suffered emotional distress, negative commentary in his employment file and in the press, damage to his reputation, and other damages.

WHEREFORE Plaintiff, Sergio Perez, demands the entry of a judgment in his favor and against Defendant, City of Opa-Locka, after trial by jury, by determining and declaring that the City violated Capt. Perez's First Amendment rights, reinstating him to his prior position, awarding him damages, including lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel and internal affairs files, a hearing to have his file cleared, costs, and all interest allowed by law.

### COUNT III – PUBLIC WHISTLEBLOWER ACT CLAIM AGAINST CITY OF OPA-LOCKA

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

Plaintiff reincorporates and re-alleges paragraphs 1 through 15 as though set forth fully herein and further alleges as follows:

81.     The City is an "employer" as the term "employer" is defined by Fla. Stat. §112.3187.

82.     Capt. Perez was at all times material hereto an "employee" of the City as the term "employee" is defined in Fla. Stat. §112.3187.

83.     Section 112.3187(7), Florida Statutes, provides protections to public employees who make signed written complaints as well as those like Capt. Perez who make verbal complaints as follows:

> This section protects employees and persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; or employees who file any written complaint to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under s. 112.3189(1), or to the Florida Commission on Human Relations.

84.     The City purchased a K-9, paid to upfit a police vehicle, paid for equipment for the K-9, and then paid to train a police officer employed by the City and this K-9 unit.

85.     The City also had a policy in place relating to the use of a K-9 within its Police Department.

86.     The City paid over $10,000 to purchase the K-9, plus additional funds for the equipment for the K-9, for the retrofitting of the police vehicle to accommodate the K-9, and paid to train this particular police officer.

87.     Chief Barreira directed that the K-9 to not be placed into service until after a new

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

policy was put into place, resulting in the waste of taxpayer funds.

88. Chief Barreira indicated that he wanted to contract with Lexipol to provide services in connection with updating and implementing the City of Opa-Locka Police Department's policies and procedures.

89. Chief Barreira received a proposal from Lexipol in which it indicated that the cost for the service exceeded $53,000, with subsequent annual subscription costs.

90. Capt. Perez objected to Chief Barreira's intent to contract with Lexipol as an unnecessary expenditure.

91. Chief Barreira disregarded the City's procurement process, policies, and established procedures when he signed an agreement with Lexipol to commit the City to pay over $53,000 for this service, even though the City has not utilized Lexipol to this date.

92. Although the City required for expenditures of $53,000 to be approved by the City's Commission, no such approval was provided for the Lexipol contract.

93. Chief Barreira nonetheless signed the Lexipol contract on behalf of the City.

94. Even though it did not implicate his position with the Police Department:

a) Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when he brought up to Chief Barreira how the City was wasting approximately $1,200 per month on storing contraband seized from the flea market more than 90 days before;

b) Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when

15

he brought up to Chief Barreira how the refusal to utilize the newly purchased K-9 amounted to a waste of public funds because the money had already been spent on purchasing the K-9, on upfitting a police vehicle, on purchasing equipment for the K-9, and on training the particular police officer; and

c)      Capt. Perez spoke truthfully about a matter of public concern involving a City that historically encountered troubles managing its own finances when he brought up to Chief Barreira how spending money Lexipol would amount to a waste of public funds.

95.      Chief Barreira did not like that Capt. Perez opposed the waste of public funds and sought to retaliate against Capt. Perez.

96.      On September 1, 2021, Capt. Perez discharged a Taser 7 with a blue training cartridge that does not result in the discharge of electrical current and that is covered with a "Velcro" hook fabric[2] (known as a HALT – Hook and Loop Training cartridge) in the vicinity of then-Sergeant Steel.

97.      Then-Sergeant Steel did not report immediately thereafter the incident, did not create any documentation to indicate that he was "injured" while on the job, and did not make a complaint to the Internal Affairs department for the City's Police Department to indicate that the discharge of the training Taser 7 "round" was inappropriate or caused him any personal injury.

98.      It was not until an anonymous email was sent on September 6, 2021 from opalockapolicechannel@protonmail.com to City officials, the Florida Department of Law

---

[2]      *See* Fn. 1.

Enforcement, and others, that then-Sergeant Steel mentioned the incident involving Capt. Perez to anyone.

99.     It was well-known with the City's Police Department that then-Sergeant Steel had a documented history in his personnel file of being untruthful and in retaliating against others within the Police Department.

100.    Then-Sergeant Steel's first job in law enforcement was with the City of Margate Police Department, a job from which he resigned on March 1, 2004, while he was under investigation for failing to properly disclose his citizenship status on his application for employment.

101.    Then-Sergeant Steel's personnel file with the City includes complaints detailing dishonesty in reporting or recording events, documented concerns about his retaliating against other officers, and his disregard for established policies and procedures.

102.    The City's Police Department conducted an Internal Affairs Investigation involving whether then-Sergeant Steel was dishonest in his application for employment by failing to disclose that he was previously charged with criminal activity in Alachua County, Florida, even though he engaged in a process to expunge his prior criminal record, and both the Chief of Police Cheryl Caison and Deputy Chief of Police Anthony J. Sanchez recommended terminating then-Sergeant Steel's employment.

103.    The City's Police Department conducted another Internal Affairs Investigation into whether then-Sergeant Steel, who at the time was the Internal Affairs Commander, had contacted three officers who had been Relieved of Duty in an effort to solicit them to conspire against the Deputy Chief of Police and both the Chief of Police Cheryl Caison and Deputy Chief of Police Anthony J. Sanchez recommended terminating then-Sergeant Steel's employment.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

104.     Then-Sergeant Steel filed a grievance with the City resulting in the City entering into a Conditional Mutual General Release with him, pursuant to which it agreed to either withdraw or find as unfounded the Internal Affairs investigation concerning his background.

105.     Seven different Police Officers employed the City's Police Department reported that then-Sergeant Steel would retaliate against them for speaking up to him, including by denying them vacation request, verbal counseling, and other means, and that he was not fit as a leader, resulting in the Assistant Chief of Police Sharon Gallimore recommending that then-Sergeant Steel be removed from any supervisory position in November 2019.

106.     Chief Barreira nonetheless capitalized on this opportunity collaborate with then-Sergeant Steel to begin the process of retaliating against Capt. Perez.

107.     Chief Barreira called then-Sergeant Steel on September 7, 2021 and asked to meet with him outside of the confines of the City of Opa-Locka Police Department to discuss the situation.

108.     As the ultimate decisionmaker on any Internal Affairs Investigation, the request by Chief Barreira to meet with then-Sergeant Steel outside of the confines of the City of Opa-Locka Police Department was outside of the chain of command for an Internal Affairs investigation, was against the Standard Operating Procedures for the City of Opa-Locka's Police Department, but it was standard practice for the City's Police Department to ignore its own policies and procedures in regard to personnel matters.

109.     Chief Barreira met with then-Sergeant Steel to discuss the incident involving Capt. Perez outside of the confines of the City's Police Department.

110.     Following that discussion, then-Sergeant Steel made an untimely incident report

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

concerning "injuries" he claims he sustained and made false statements to initiate and in connection with the law enforcement investigation involving Capt. Perez, despite the prohibition on same found at Fla. Stat. §837.05.

111.    John Pate, City Manager for the City at the time, later indicated at a City Commission hearing he would wait for an investigation to conclude before taking any actions involving Capt. Perez or his employment.

112.    Chief Barreira nonetheless ignored that directive and the City's procedures by suspending Capt. Perez as of September 10, 2022, which action was ratified by the City.

113.    Capt. Perez complied with the requirements imposed by the City's Code of Ordinances by making the aforementioned complaints and then making a writing request for whistleblower protection on September 28, 2021, concerning the "fabricated incident" involving then-Sergeant Steel.

114.    Capt. Perez remained suspended for several months, contrary to the City's own policies, rules, and regulations.

115.    Had the City conducted an investigation, it would have learned that Capt. Perez did not aim or fire a Taser 7 training / Velcro round at then-Sergeant Steel.

116.    Kent C. Jurney, CPP, CPE, MSM, who conducted a polygraph examination of Capt. Perez on December 29, 2021, and concluded that Capt. Perez truthfully responded that he did not aim, did not intend to hit, and did not intentionally try to shoot then-Sergeant Steel with the Taser 7's training / Velcro round.

117.    When Dennis Jackson, II, assumed the position of Interim Chief of Police, he reviewed the facts at hand, determined that there was no legitimate basis to take any adverse

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

employment actions against Capt. Perez, and immediately reinstated Capt. Perez to duty in the position of Captain with the Police Department on November 15, 2021.

118.    The City Manager Pate was then fired on January 13, 2022.

119.    With a new City Manager in place, and after promoting then-Sergeant Steel following his serving a demand letter on the City, the City promptly demoted Capt. Perez to the rank of Sergeant on January 17, 2022, resulting in a significant decrease in Capt. Perez's pay.

120.    Although he remained a Sergeant in the City's Police Department, the City again ignored its established rules, regulations, policies, and/or procedures in demoting Capt. Perez and in reducing his pay.

121.    The City also at the same time relegated Capt. Perez to working as Code Enforcement officer, and so Capt. Perez now rides in a City of Opa-Locka Code Enforcement vehicle (instead of a police unit) driven by another officer and is deprived of the use of his City-issued service weapon, but did so against the City's established rules, regulations, policies, and/or procedures.

122.    The City also ignored its established rules, regulations, policies, and/or procedures in having Capt. Perez work as a Code Enforcement Officer and in his riding in a City of Opa-Locka Code Enforcement vehicle without the use of his City-issued service weapon.

123.    The City ignored Chapter 23 of its Code of Ordinances by failing to timely conduct an investigation of the items identified in the letter dated September 28, 2021 within the requisite 30-day timeframe, and did not request or receive an extension of time from Capt. Perez prior to the expiration of the relevant deadline(s).

124.    Section 112.3187(5), Florida Statutes, identifies the type of information disclosed

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

that would subject someone like Capt. Perez to fall within the protections of the Florida Whistleblower Statute to include the following:

(a)   Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

(b)   Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

125.   Capt. Perez's complaint(s) about misfeasance, malfeasance, and financial mismanagement qualify as a type of violations of envisioned by Chapter 23 of the Opa-Locka Code of Ordinances.

126.   Capt. Perez's complaint(s) about financial mismanagement qualify as a type of violation(s) of envisioned by Fla. Stat. §112.3187 and that the statute was designed to encourage people like Capt. Perez to report.

127.   Capt. Perez's complaint(s) about the unlawful treatment that he received since September 1, 2021 qualify as a type of violation(s) of envisioned by Fla. Stat. §112.3187 and that the statute was designed to encourage people like Capt. Perez to report

128.   Chapter 23 of the Opa-Locka Code of Ordinances, and Fla. Stat. §112.3187 were designed to encourage people like Capt. Perez to report.

129.   In order to fall within the protections of the statute, Fla. Stat. §112.3187 further requires that a disclosure involving a municipality, such as the City, be made to the City Manager – who is the functional equivalent of the chief executive officer – based on the following statutory language:

However, for disclosures concerning a local governmental entity, including any regional,

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

county, or municipal entity, special district, community college district, or school district or any political subdivision of any of the foregoing, the information must be disclosed <u>to a chief executive officer</u> as defined in s. 447.203(9) or other appropriate local official.

130.     Capt. Perez satisfied the statutory requirement by disclosing his concerns to City Manager Pate in his letter dated September 28, 2021.

131.     The City thereafter took the type of adverse employment actions prohibited by Fla. Stat. §112.3187 against Capt. Perez, when it pursued a baseless investigation of him, when it demoted him, when it reduced his pay, and when it relegated him to a Code Enforcement Officer without affording him due process.

132.     The City took these adverse employment actions against Capt. Perez as a direct and proximate response to his complaints.

133.     As a direct and proximate result of the City's taking adverse employment actions described herein, Capt. Perez lost past and future wages, benefits, suffered emotional distress, negative commentary in his employment file and in the press, damage to his reputation, and other damages.

WHEREFORE Plaintiff, Sergio Perez, demands the entry of a judgment in his favor and against Defendant, City of Opa-Locka, after trial by jury, by determining and declaring that the City violated Capt. Perez's rights, reinstating his employment to the rank of Captain, awarding him damages, including lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel and internal affairs files, a hearing to have his file cleared, attorneys' fees, costs, and all interest allowed by law.

### COUNT IV – 42 U.S.C. §1983 PROCEDURAL DUE PROCESS VIOLATION <u>AGAINST STEVEN BARREIRA</u>

22

Plaintiff, Sergio Perez, reincorporates and re-alleges paragraphs 1 through 15 as though set forth fully herein and further alleges as follows:

134.    Chief Barreira has a history, pattern, and practice of ignoring the City's established policies, procedures, and procurement code, and his disregard for those policies, procedures, and procurement code became Chief Barreira's unofficial policy and practice.

135.    Chief Barreira was the policymaker for the City's Police Department and was ultimately responsible for personnel decisions, suspensions, demotions, its finances, and the outcome of internal affairs investigations.

136.    In June 2021, Capt. Perez began complaining to Chief Barreira by email that the City was wasting approximately $1,200 per month on storing contraband seized at the flea market more than 90 days earlier.

137.    Capt. Perez continued to insist that the City should proceed to advertise the seized property so that it could not only sell the seized property, but to also cease having to waste precious financial resources of the City by paying approximately $1,200 monthly storage fees that were completely avoidable.

138.    Chief Barreira did not take any actions to avoid incurring the approximately $1,200 monthly storage fees, and he instead retaliated against Capt. Perez by assigning to him additional job duties that were traditionally performed by a Sergeant less than a week after Capt. Perez complained about the wasting of public funds, instead of re-assigning those job duties from one Sergeant to another Sergeant.

139.    The City previously purchased a K-9, paid to upfit a police vehicle, paid for equipment for the K-9, and then paid to train a police officer employed by the City and this K-9

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

unit.

140.    The City also had a policy in place relating to the use of a K-9 within its Police Department.

141.    The City paid a significant amount of money to purchase the K-9, to upfit the police vehicle, for equipment for the K-9, and to train this particular police officer.

142.    In July 2021, Chief Barreira directed that the K-9 to not be placed into service until after a new policy was put into place, resulting in the waste of taxpayer funds for over a week.

143.    Chief Barreira indicated that he wanted to contract with Lexipol to provide services in connection with updating and implementing the City of Opa-Locka Police Department's policies and procedures.

144.    Chief Barreira received a proposal from Lexipol in which it indicated that the initial cost for the service exceeded $53,000, plus additional annual subscription fees.

145.    Capt. Perez objected to Chief Barreira's intent to contract with Lexipol as an unnecessary expenditure.

146.    Chief Barreira disregarded the City's policies, procedures, procurement code when he signed an agreement with Lexipol to commit the City to pay over $53,000 for this service, even though the City has not utilized Lexipol to this date.

147.    Although the City required for expenditures of $53,000 to be approved by the City's Commission, no such approval was provided for the Lexipol contract.

148.    On July 7, 2021, Chief Barreira terminated the employment of Officer Robert Demoya, confirming the same by email to his department at 10:55 a.m. that day.

149.    In terminating Officer Robert Demoya's employment, Chief Barreira ignored

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

established policies or procedures, did not conduct a pre-determination hearing for Officer Robert Demoya, and did not follow the Collective Bargaining Agreement's requirements in taking this adverse employment action against Officer Robert Demoya.

150.    Capt. Perez responded to the above-referenced email by informing Chief Barreira about the policies and procedures that must first be followed to terminate a police officer's employment, resulting in Chief Barreira sending another email to the Police Department at 11:48 a.m. that same day to clarify that Officer Robert Demoya "…HAS NOT been terminated from employment with the Opa-Locka Police Department, and shall retain all rights and privileges afforded to this position."

151.    On September 1, 2021, Capt. Perez discharged a Taser 7's blue training cartridge that does not result in the discharge of electrical current and that is covered with a "Velcro" hook fabric[3] (known as a HALT – Hook and Loop Training cartridge) in the vicinity of then-Sergeant Steel.

152.    Then-Sergeant Steel did not report immediately thereafter the incident, did not create any documentation to indicate that he was "injured" while on the job, and did not make a complaint to the Internal Affairs department for the City's Police Department to indicate that the discharge of the training Taser 7 "round" was inappropriate or caused him any personal injury.

153.    If Sergeant Steel were injured, then he would have been required to complete a "First Report of Injury".

154.    If Sergeant Steel had a problem with the circumstances under which Capt. Perez discharged the Taser 7's blue training cartridge "Velcro", he was further required to immediately

---

[3]     *See* Fn. 1.

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
*www.fairlawattorney.com*

report the incident to the Internal Affairs department at the City's Police Department, or his supervisor.

155.    It was not until an anonymous email was sent on September 6, 2021 from opalockapolicechannel@protonmail.com to City officials, the Florida Department of Law Enforcement, and others, that then-Sergeant Steel mentioned the incident involving Capt. Perez to anyone.

156.    The City Manager, John Pate, directed Chief Barreira to open an internal affairs investigation into the incident described in the email.

157.    Chief Barreira did not initiate an internal affairs investigation; instead, he called then-Sergeant \ Steel on September 7, 2021, and asked to meet with him outside of the confines of the City of Opa-Locka Police Department to discuss the situation surreptitiously.

158.    As the ultimate decisionmaker on any Internal Affairs Investigation, the request by then-Chief of Police Steven Barreira to meet with then-Sergeant Steel outside of the confines of the City of Opa-Locka Police Department was outside of the chain of command for an Internal Affairs investigation, was against the Standard Operating Procedures for the City of Opa-Locka's Police Department, and was against the directive from the City Manager, but it was standard practice for the City's Police Department to ignore its own policies and procedures in regard to personnel matters.

159.    Chief Barreira met with then-Sergeant Steel to discuss the incident involving Capt. Perez outside of the confines of the City's Police Department.

160.    John Pate, City Manager for the City at the time, later indicated at a City Commission hearing he would wait for an investigation to conclude before taking any actions

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

involving Capt. Perez or his employment.

161.     Chief Barreira nonetheless ignored that directive from City Manager Pate and the City's procedures by at first suspending Capt. Perez as of September 10, 2022.

162.     Chief Barreira ignored the City's custom and practice that the City utilized when it address similar situations involving Sgt. Hugo Alvarado and Sgt. Jack Pelaez when it suspended Capt. Perez with pay.

163.     Meanwhile, then-Sergeant became the subject of an Internal Affairs investigation for violating several departmental policies in September of 2021.

164.     When Dennis Jackson, II, assumed the position of Interim Chief of Police, he reviewed the facts at hand, determined that there was no legitimate basis to take any adverse employment actions against Capt. Perez, and immediately reinstated Capt. Perez to duty in the position of Captain with the Police Department on November 15, 2021.

165.     Then, the City demoted Capt. Perez to the rank of Sergeant on January 17, 2022, resulting in a significant decrease in Capt. Perez's pay, shortly before the City promoted then-Sergeant Steel to Interim Chief (following its receipt of the demand letter from counsel for then-Sergeant Steel).

166.     Promptly after promoting then-Sergeant Steel to Interim Chief of Police, Capt. Perez was re-assigned from working at a desk in the Code Enforcement division to riding around the City of Opa-Locka in a Code Enforcement vehicle, in civilian clothing, so that he could enforce parking violations.

167.     Although he remains a Sergeant in the City's Police Department, the City ignored its established rules, regulations, policies, and/or procedures in demoting Capt. Perez and in

reducing his pay.

168.    The City also relegated Capt. Perez to working as Code Enforcement officer, and so Capt. Perez now utilizes a City of Opa-Locka Code Enforcement vehicle (instead of a police unit) and is deprived of the use of his City-issued service weapon, but did so against the City's established rules, regulations, policies, and/or procedures.

169.    The City also ignored its established rules, regulations, policies, and/or procedures in having Capt. Perez work as a Code Enforcement Officer and in his riding in a City of Opa-Locka Code Enforcement vehicle without the use of his City-issued service weapon.

170.    The City failed to conduct any hearing prior to taking the aforementioned actions against Capt. Perez.

171.    The City failed to afford Capt. Perez any opportunity to conduct a hearing prior to taking the aforementioned actions against Capt. Perez.

172.    The City's de-facto custom and policy is to ignore its own policies and procedures in disciplining the members of its Police Department to the detriment of its police officers in general and Capt. Perez in this instance.

173.    The City knew and/or reasonably should have known about its deliberate indifference to due process rights of the members of its Police Department based on its repeatedly ignoring their constitutional rights and being subjected to demand letters, lawsuits, and internal memoranda regarding same.

174.    The final policymakers – Chief Barreira and then-Sergeant Steel – carried out this unofficial City policy of depriving Police Officers of their due process rights.

175.    Capt. Perez has no adequate remedy under Florida law for the deprivation of his

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

rights to cure the lack of an available process, as set forth above.

176.    The City failed to include or implement any specific policy that would entitle employees such as and including Capt. Perez, to any right to a name clearing hearing prior to (or after) a demotion and reduction in pay. Consequently, its policy and custom remain to deprive employees like and including Capt. Perez of a name clearing hearing.

177.    At no time prior to January 17, 2022, did the City permit Capt. Perez to present evidence or offer any response to any accusation against him nor to participate in any process regarding his demotion and reduction in pay, let alone to provide him with a name clearing hearing.

178.    The City provided Capt. Perez no meaningful opportunity for a name clearing hearing before demoting him, as it instead demoted and demeaned him without due process, and a post-demotion hearing would be a meaningless charade.

179.    The City identified no reason(s) why it could or did not conduct a pre-determination hearing before taking any adverse employment actions against Capt. Perez.

180.    Capt. Perez had no adequate remedy at law to address the aforesaid conduct by the City.

181.    As a direct and proximate result of the City's actions as aforesaid, Capt. Perez suffered damages in the form of the above-described demotion, lost pay, decreased contributions to his pension, he suffered emotional distress, a blow to his reputation, the and a damaged ability to obtain employment in a similar capacity, and other damages.

WHEREFORE Plaintiff, Sergio Perez, demands the entry of a judgment in his favor and against Defendant, City of Opa-Locka, after trial by jury, by determining and declaring that the

135 San Lorenzo Avenue, Suite 770, Coral Gables, FL 33146
TEL 305.230.4884   FAX 305.230.4844
www.fairlawattorney.com

City violated Capt. Perez's due process rights, awarding damages, including to his reputation, lost past and future wages and employment-related benefits, emotional distress damages, to have all offending information removed from his personnel file, attorneys' fees, costs, and all interest allowed by law.

## DEMAND FOR JURY TRIAL

Plaintiff, Sergio Perez, demands a trial by jury of all issues so triable.

Respectfully submitted this 11th day of March 2022,

> s/Brian H. Pollock, Esq.
> Brian H. Pollock, Esq.
> Fla. Bar No. 174742
> brian@fairlawattorney.com
> FAIRLAW FIRM
> 135 San Lorenzo Avenue
> Suite 770
> Coral Gables, FL 33146
> Tel:    305.230.4884
> *Counsel for Plaintiff*