UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 1:22-cv-20748-JAL

SERGIO PEREZ,

      Plaintiff,

v.

CITY OF OPA-LOCKA,

      Defendant.

## DEFENDANT, CITY OF OPA-LOCKA'S, MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Defendant, CITY OF OPA-LOCKA ("Defendant" or "City"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1, moves for the entry of an Order granting final summary judgment in its favor, and as grounds, states:

## I.    Introduction and Motion[1]

Plaintiff, Sergio Perez ("Plaintiff"), has sued the City for alleged violations of his procedural due process rights and claimed First Amendment rights via 42 U.S.C. § 1983. [DE 37] at Counts I, II, IV. Plaintiff has also sued the City for a purported violation of Florida's public Whistle-blower's Act, Fla. Stat. § 112.3187. *Id.* at Count III.

At all material times, Plaintiff was a Captain in the City's police department. [DE 37] at ¶ 2. On September 1, 2021, Plaintiff discharged a department-issued taser at then-Sergeant Michael Steel ("Steel") while inside of the City's police station ("taser incident"). Facts at ¶ 32. As a result of the taser incident, Chief Steven Barreira ("Chief Barreira"), instructed Plaintiff to perform his

---

[1] In this motion and memorandum, the City references its concurrently-filed statement of undisputed material facts in support of summary judgment thusly: **Facts at ¶ __.**

administrative Captain duties at home pending investigation. Facts ¶¶ 33, 35-36. City Manager Pate later demoted Plaintiff from Captain to Sergeant in January 2022 after Plaintiff was criminally charged for the taser incident. Facts at ¶¶ 51-52. As Captain, Plaintiff did not have a protected property interest in his employment and he was not subject to any protections or due process rights afforded under the operative Collective Bargaining Agreement. Facts at ¶¶ 5-9.

Plaintiff never engaged in protected speech in connection with assignments and duties he performed in his capacity as Captain and otherwise was privy to because of his employment as Captain. See, e.g., Facts at ¶¶ 11- 28. Nobody ever retaliated against Plaintiff for such alleged protected speech. Steel never retaliated against Plaintiff for filing a lawsuit against the City. Facts at ¶¶ 54-58. Regarding the section 1983 claims, Plaintiff has failed to establish the existence of a custom or policy sufficient to establish municipal liability under *Monell.* Lastly, Plaintiff never engaged in protected whistleblower activity, and there is no causal connection whatsoever that can be made between claimed protected activity and purported adverse action. Facts at ¶¶ 42-50. As set forth below, there exists no genuine issue as to any material fact, and the City is entitled to judgment as a matter of law on the Second Amended Complaint [DE 37].

WHEREFORE, Defendant, CITY OF OPA-LOCKA, respectfully requests the entry of an order granting summary judgment in its favor; the entry of final judgment upon that order; and such further relief as this Court deems just and proper.

## II.   Memorandum of Law

### A.   No procedural due process claim (Count I)

To state a claim for the denial of a property interest without due process of law, Plaintiff must establish (1) deprivation of a constitutionally-protected property interest; (2) governmental action; (3) and constitutionally inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). In order to establish a valid claim, Plaintiff must demonstrate that **state law** failed to

provide him with an adequate pre-deprivation or post-deprivation remedy. See *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam).

### 1. No valid property interest

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Morley's Auto Body, Inc. v. Hunter*, 70 F.3d 1209, 1213 (11th Cir. 1995), citing *Board of Regents v. Roth*, 408 U.S. 564 (1972) (the person "must have more than a unilateral expectation of it…[and] must, instead, have a legitimate claim of entitlement to it"). "Property interests, of course, are not created by the Constitution…[r]ather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* State law defines the parameters of a plaintiff's property interest for purposes of section 1983. *Mackenzie v. City of Rockledge*, 920 F.2d 1554, 1559 (11th Cir. 1991) (further noting that "whether state law has created a property interest is a legal question for the court to decide"). Under Florida law, an employee does not have a property interest in his or her employment unless a contract or state or local law provides something more than an "at-will" relationship. See *Lee County Port Authority v. Wright*, 653 So.2d 1104, 1105 (Fla. 2nd DCA 1995).

*Sub judice,* Plaintiff contends that the City violated his procedural due process rights when he was sent home to work in September 2021 following the taser incident and when he was later demoted from Captain to Sergeant in January 2022 after being criminally charged in connection with the taser incident. See, e.g., [DE 37] at ¶¶ 43, 50. Plaintiff is <u>wrong</u>.

As Captain, Plaintiff was not subject to any protections or due process rights afforded under the operative Collective Bargaining Agreement ("CBA"). Facts at ¶ 5. The CBA is explicit. Facts at ¶ 5. The CBA exclusively protects the property rights of Officers, Corporals, and Sergeants. Facts at ¶ 5. The CBA did not apply to Captains or any other member of the police department's command staff at the time Plaintiff held the position of Captain from February 2021 through January 2022.

Facts at ¶ 6. Indeed, any member of the City's police department who accepts a position outside the protections of the CBA is treated as an at-will employee. Facts at ¶ 7. There are no due process rights afforded to these employees in connection with any claimed adverse action taken against them. Facts at ¶¶ 7-9.

Plaintiff held the position of Captain at the time of the September 1, 2021, taser incident. Facts at ¶¶ 1, 4, 32. Any procedural due process claims premised on Plaintiff being sent home to work as a direct result of the taser incident in September 2021 and Plaintiff's later January 2022 demotion from Captain to Sergeant after being charged criminally in connection with the taser incident fail as a pure matter of law. Facts at ¶¶ 35-36, 50-51. As Plaintiff did not have any cognizable property interest in his continued employment as a Captain, Plaintiff cannot establish that his alleged procedural due process rights were violated. *Foster v. Cherokee Cnty.*, 744 F. App'x 644, 647 (11th Cir. 2018) (affirming dismissal of procedural due process claim under Section 1983 where the plaintiff failed to establish a protected property interest in his employment); *Whitfield v. City of Hallandale Beach, Fla.*, 2021 WL 4987938, at *6 (S.D. Fla. May 14, 2021) (granting summary judgment in the defendant's favor on the plaintiff's section 1983 procedural due process claim because the plaintiff did not have a cognizable property interest in her employment). The City is entitled to judgment on Count I.

### 2.  No constitutionally inadequate process established

Notwithstanding,[2] assuming *arguendo* that Plaintiff had a viable property interest in his continued employment as a Captain (he did <u>not</u>), Plaintiff has not and cannot establish the final element of a proper due process claim (i.e., that he was provided constitutionally inadequate process).

---

[2] This argument is asserted without waiving the threshold argument above and provides additional, independent grounds to grant summary judgment in the City's favor on Count I.

The City's decisions that allegedly deprived Plaintiff of a property interest (Chief Barreira's instruction to Plaintiff to work from home after the taser incident in September 2021 and Plaintiff's January 2022 demotion) could have been subject to meaningful review by the state court. See *Reams v. Irvin*, 561 F.3d 1268, 1266 (11th Cir. 2009) (procedural due process is satisfied whenever the State of Florida has provided – or would have provided – an adequate post-deprivation remedy); *Horton v. Bd. of Cnty. Commissioners of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2002) ("the process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts <u>would</u> provide if asked."); *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000).

These cases stand for the proposition that the claimant's ability to secure relief through state-law remedies -- after an initial denial of due process -- negates a claim under 42 U.S.C. § 1983 for an alleged deprivation of procedural due process:

> We said that only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise. It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. This rule (that a section 1983 claim is not stated unless inadequate state procedures exist to remedy an alleged procedural deprivation) recognizes that the state must have the opportunity to remedy the procedural failings of its subdivisions and agencies in the appropriate fora--agencies, review boards, and state courts before being subjected to a claim alleging a procedural due process violation.

*Cotton,* 216 at 1330-1331; *McKinney v. Pate*, 20 F.3d 1550, 1557-1563 (11th Cir.1994) (en banc) (holding that Florida courts have the means to remedy employment termination cases, including procedural due process claims and explaining that "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise").

*Sub judice*, the record is devoid of evidence to establish that Plaintiff ever pursued any state law avenue to challenge the purported deprivations of Plaintiff's claimed property interest in his Captain role – at any time. Any procedural due process claim therefore fails as a pure matter of law. The City is entitled to judgment on Count I.

**B.   No First Amendment claim – "financial mismanagement" (Count II)**

"A First Amendment retaliation claim by a government employee against his or her employer requires balancing 'the interests of the... citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the public services it performs through its employees.'" *Valdes v. City of Doral*, 2015 WL 1968849, *9 (S.D. Fla. 2015) (quoting *Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968).

To establish a valid First Amendment retaliation claim, Plaintiff must establish that (1) he was speaking as a citizen on a matter of public concern; (2) his interests as a citizen outweighed the interests of the City as an employer; and (3) the speech played a substantial or motivating role in the adverse action. *Vila v. Padron*, 484 F.3d 1334, 1339 (11th Cir. 2007) (citation omitted). "If the plaintiff establishes these elements, the burden shifts to the defendant to prove it would have made the same adverse employment decision absent the employee's speech." *Id.,* citing *Akins v. Fulton County*, 420 F.3d 1293, 1303 (11th Cir. 2005). The first two elements are questions of law that the court decides. *Id.*, citing *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

**1.   No protected "speech"**

In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court considered whether a memorandum written by a deputy district attorney about misrepresentations contained in an affidavit used by police to obtain a search warrant was protected by the First Amendment. *Id.* at 413-17. The Supreme Court "identified as relevant two factors that, considered in isolation, are not dispositive: first, whether the speech occurs in the workplace; and second, whether the speech concerns the

subject matter of the employee's job." *Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282 (11th Cir. 2009) (citing *Garcetti*, 547 U.S. at 420-21). However, "'**[t]he controlling factor**' in *Garcetti* was that [the plaintiff's] statements were made pursuant to his job duties." *Abdur-Rahman*, 567 F.3d at 1282-83 (citing *Garcetti,* 547 U.S. at 421) (emphasis added).

The Supreme Court defined speech made pursuant to an employee's job duties as "speech that **owes its existence** to a public employee's professional responsibilities," *Garcetti*, 547 U.S. at 421 (emphasis added), and a product that "the **employer** itself **has commissioned or created**." *Id.* at 422 (emphasis added). The Supreme Court stated that *"*when public employees make statements **pursuant to their official duties**, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421 (emphasis added). Moreover, in *Lane v. Franks*, 134 S.Ct 2369 (2014), the Supreme Court explained "[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 2379. The court held that "a public employee who provides truthful **sworn testimony**, compelled by subpoena, **outside** the scope of his ordinary job responsibilities" is entitled to First Amendment protection. *Id.* at 2378 (emphasis added).

Here, Plaintiff contends that he was speaking as a citizen on matters of public concern regarding the City's expenditures on the storage of seized contraband, deployment of a police K-9, and contemplation of utilizing a service called Lexipol. See, e.g., [DE 37] at ¶¶ 80, 87. The record establishes otherwise. In his capacity as the Chief of Police, Chief Barreira specifically instructed Plaintiff to investigate the City's expenditures of $1,200.00 per month on the storage of contraband. Facts at ¶ 11. These costs were being incurred by the City prior to Chief Barreira's arrival at the City. Facts at ¶ 11. Chief Barreira received word that the seizures were not legitimate and he therefore wanted to understand the seizure process, ensure that the process was legitimate, and

confirm whether the City was lawfully entitled to seize the contraband. Facts at ¶ 11. As Plaintiff admits, Chief Barreira specifically assigned this task to Plaintiff in his capacity as a Captain. Facts at ¶¶ 11-12.

Plaintiff was familiar with these seizures because they were part of his job duties as Captain. Plaintiff testified that he oversaw the Criminal Investigations Division that made the arrests, participated in confiscating the stored contraband, and assisted in deciding where the contraband would be stored. Facts at ¶ 13. And Plaintiff explicitly testified that his role in the oversight, participation, and decisionmaking regarding the storage of the contraband allowed him to learn the amount the City was paying to store the contraband. Facts at ¶ 14. All of Plaintiff's conversations with Chief Barreira regarding the contraband storage occurred in the workplace and any written communications were authored by Plaintiff to Chief Barreira using his City-issued email with his City signature block in the body of the email. Facts at ¶ 15. Plaintiff never "complained" to Chief Barreira or "objected" that the City was wasting money in connection with the storage of the contraband. Facts at ¶ 11. There is no protected speech associated with the storage of contraband issue.

The same holds true for the K-9 issue. City Manager Pate authorized the purchase of the police K-9. Facts at ¶ 17. In his capacity as the Chief of Police, Chief Barreira instructed Plaintiff in his capacity as a Captain to draft an updated K-9 policy for his review. Facts at ¶ 17. Chief Barreira believed the City's K-9 policy at the time the K-9 was purchased was outdated and inadequate. Facts at ¶ 17. Additionally, Chief Barreira believed the K-9 was not adequately trained yet. Facts at ¶ 18. Police K-9s inherently expose the City to potential additional liability. Facts at ¶ 18. Chief Barreira wanted to ensure that the police department had an adequate K-9 policy in place and that the K-9 was sufficiently trained before the K-9 was deployed. Facts at ¶ 18. The K-9 was withheld from deployment for a period of no more than a few weeks. Facts at ¶ 18. Plaintiff explicitly

admitted that Chief Barreira advised Plaintiff that the Chief did not want to deploy the K-9 until the City's K-9 policy was updated. Facts at ¶ 21.

Plaintiff's own testimony dispositively confirms that the deployment of the K-9 was specifically within the scope of Plaintiff's employment duties at the City. Plaintiff unequivocally testified that he actively participated in the purchase of the K-9, **"spearheaded"** the K-9 unit, and described the K-9 unit as his **"baby."** Facts at ¶ 19. (emphasis added).  All purported "concerns" raised by Plaintiff pertaining to the K-9 deployment were authored by Plaintiff from his City email with his signature block on the bottom, while in the workplace, or while discussing City business outside of the workplace. Facts at ¶ 20. Plaintiff only possessed information and knowledge relating to the K-9 deployment by virtue of his position in the City's police department. Facts at ¶ 23. There is no protected speech associated with the K-9 issue.

Within a short time after Chief Barreira commenced employment at the City, a proposed Lexipol agreement was sent to him. Facts at ¶ 25. The City Manager knew about this. Facts at ¶ 25. Chief Barreira signed the agreement and gave it to his staff assistant to send to the City Manager for approval. Facts at ¶ 25. For whatever reason, the agreement did not make it to Pate but rather was sent to Lexipol. Facts at ¶ 25. When the inadvertent error was realized, Lexipol advised that it would nullify the agreement and treat it as void. Facts at ¶ 25. The City never spent any monies in connection with Chief Barreira's inadvertent execution of that particular agreement and Lexipol never provided any services to the City. Facts at ¶ 25. Plaintiff only possessed information and knowledge relating to Lexipol by virtue of his position in the police department.  Facts at ¶¶ 26-27.

In the end, Plaintiff's own testimony dispositively establishes that Plaintiff never spoke as a citizen on a matter of public concern regarding any of the above issues. If Plaintiff truly believed he was speaking as a citizen on matters of public concern, he would have raised such issues at a public

Commission meeting or gone to the press. He did neither. Facts at ¶ 31. <u>None</u> of this is actionable speech under the First Amendment. *Garcetti; Walker,* supra. The City is entitled to judgment.

### 2. No adverse action - September 2021[3]

Plaintiff contends that he was "suspended" in September 2021 when he was placed on administrative leave. [DE 37] at ¶¶ 43, 95. Even assuming that was the case, that "suspension" does not constitute actionable adverse employment action. In *Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021), the defendant's executive director was suspended with pay pending an investigation against him. The Eleventh Circuit affirmed the district court's entry of summary judgment in the defendant's favor and found that "a simple paid suspension is not an adverse employment action." *Id.* at 1267 (further explaining how a "paid suspension can be a useful tool for an employer to hit "pause" and investigate when an employee has been accused of wrongdoing"); see also *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1379 (11th Cir. 2021) (finding that a public employee's paid suspension pending an investigation was not an adverse employment action for purposes of a First Amendment retaliation claim).

Here, Chief Barreira directed Plaintiff to perform his administrative duties at home as a direct result of Plaintiff's September 1, 2021, taser incident while the incident was investigated. Facts at ¶¶ 35-36. Plaintiff maintained the same title of Captain, and there was no change to Plaintiff's pay or status. Facts at ¶ 38. The City is entitled to judgment.

### 3. No causal connection

There is otherwise no causal connection that can be made between any claimed protected speech and Plaintiff being sent home to work following the taser incident in September 2021. Chief Barreira's instruction to Plaintiff to work from home in September 2021 stemmed solely from the

---

[3] The arguments below are asserted without waiving the threshold and dispositive issue above that Plaintiff never engaged in any protected speech whatsoever.

taser incident and nothing else. Facts at ¶¶ 35-37. Dispositively, Plaintiff testified that he has **no** evidence that any claimed adverse action taken against him occurred in retaliation for any conversations or alleged concerns Plaintiff raised to Chief Barreira regarding the storage fees associated with the contraband. Facts at ¶ 16. Plaintiff likewise has **no** evidence that any claimed adverse action taken against him occurred in retaliation for raising purported issues relating to the deployment of the K-9. Facts at ¶ 22. Nor can Plaintiff pinpoint any claimed Lexipol "objection" to his purported September 10, 2021, relief of duty or any other claimed adverse action. Facts at ¶ 28. In the absence of a causal nexus between alleged protected speech and claimed protected activity, the City is entitled to judgment.

Regarding Plaintiff's January 2022 demotion from Captain to Sergeant after being criminally charged with the taser incident, there is nothing in the evidentiary record to establish that such demotion occurred because Plaintiff allegedly engaged in free speech by purportedly "objecting" to Chief Barreira regarding financial mismanagement. Indeed, Chief Barreira resigned from the City in October 2021 and played zero role in any personnel decisions regarding Plaintiff after he resigned (i.e. Plaintiff's January 2022 demotion). Facts at ¶ 39. In the end, there is nothing to link Plaintiff's alleged protected speech to any purported adverse action. Plaintiff explicitly admits as much. Facts at ¶¶ 16, 22, 28. The City is entitled to judgment on Count II.

### 4. The First Amendment claim further fails under a *Pickering* analysis

The City is further entitled to judgment under *Pickering v. Board of Education of Twp. High School District* 205, 391 U.S. 563 (1968):

> To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action. . . . If an employee satisfies her burden on the first three steps, the burden then shifts to the employer to show by a preponderance of the evidence

> that it would have made the same decision even in the absence of the
> protected speech.

*Cook v. Gwinnett Cty. Sch. Dist.*, 414 F.3d 1313, 1318 (11th Cir. 2005). The first two steps in the

*Pickering* analysis are questions of law. *Id.* The City has already addressed the first prong above.

See Section II(B)(1), supra. Plaintiff cannot meet his burden on the second factor because he cannot

establish that his purported free speech rights outweighed the City's interests in effectively and

efficiently managing the operations of its police department.

Assuming Plaintiff's speech involved a matter of public concern, "the question becomes"—

under the second step of the *Pickering* analysis—"whether the relevant governmental entity had an

adequate justification for treating the employee differently from any other member of the general

public." See *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). A municipality, like the City here, has

"broader discretion to restrict speech when it acts in its role as employer, but the restriction it

imposes must be directed at speech that has **some potential** to affect the entity's operations." *Id*.

(emphasis supplied). Likewise, municipalities, like the City here,  "need a significant degree of

control over their employees' words and actions; without it, there would be little chance for the

efficient provision of public services." *Id*.; see also *Connick v. Myers*, 461 U.S. 138, 146 (1983)

(municipal employers enjoy "wide latitude in managing their offices, without intrusive oversight by

the judiciary in the name of the First Amendment.").

Additionally, police departments have even more specialized concerns than a normal

government office. See *Hansen v. Soldenwagner*, 19 F.3d 573 (11th Cir. 1994) ("a police department

is a paramilitary organization with a need to secure discipline, mutual respect, trust, and particular

efficiency among the ranks due to its status as a quasi-military entity different from other public

employers."); see also *Busby v. City of Orlando*, 931 F.2d. 764, 773 (11th Cir. 1991) (police

departments have a compelling interest in maintaining "the police department's reputation."); *Green*

*v. Finkelstein*, 2021 WL 4749686, at *16 (S.D. Fla. Oct. 12, 2021) ("it is well-settled that a government's legitimate interest in avoiding disruption does not require proof of actual disruption").

Utilizing the above analysis, while Plaintiff claims the City retaliated against him for engaging in free speech, Plaintiff cannot demonstrate he was treated differently than any other employee in the City's police department. Chief Barreira never considered Plaintiff's alleged protected speech but would have sent Plaintiff home regardless of such claimed speech given the seriousness of the taser incident and the pendency of an investigation. Facts at ¶ 37;  *Pickering; Garcetti,* supra. The taser incident was *unprecedented.* Facts at ¶ 33. Plaintiff admits as much. Facts at ¶ 34. The City's need to secure its police department's discipline, respect, trust, and reputation outweighed any purported free speech rights claimed by Plaintiff. The City is entitled to judgment on Count II.

### C.  <u>No First Amendment Retaliation claim – filing of lawsuit (Count IV)</u>

To state a § 1983 First Amendment retaliation claim, Plaintiff must show: (1) he engaged in constitutionally protected speech; (2) the defendant's retaliatory conduct adversely affected that protected speech; and (3) a causal connection exists between the defendant's retaliatory conduct and the adverse effect on the plaintiff's speech and right to petition. *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). "To be considered an adverse employment action in a First Amendment retaliation case, the complained-of action must involve an important condition of employment." *Akins v. Fulton Cnty., Ga.,* 420 F.3d 1293, 1300 (11th Cir. 2005) (further explaining that a public employee states a case for retaliation when the alleged employment action would likely "chill the exercise of constitutionally protected speech").

In order to constitute an actionable adverse employment action, an employer's action must "impact the terms, conditions, or privileges of the plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park, Fla*., 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that to "prove

adverse employment action… an employee must show a serious and material change in the terms, conditions, or privileges of employment…[and that] the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir.1998) (counseling memoranda and "negative performance evaluations, standing alone, cannot constitute an adverse employment action"); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir.1994) (allegedly unjustified negative performance evaluation held not actionable).

Here, Plaintiff contends that Steel did not approve his 2021-2022 performance evaluation on March 8, 2022, in retaliation for Plaintiff filing a lawsuit against the City on March 11, 2022. [DE 37] at ¶ 194.[4] But the record is devoid of any evidence establishing that Plaintiff's 2021-2022 performance evaluation was not approved by Steel in retaliation for Plaintiff filing a lawsuit against the City. To the contrary, the undisputed record evidence establishes that Steel <u>never</u> once considered Plaintiff's lawsuit against the City as a means to purportedly retaliate against Plaintiff in any claimed way. Facts at ¶¶ 54-58.

The absence of evidence to establish that Steel ever considered Plaintiff's lawsuit in connection with the evaluation aside, Plaintiff otherwise admits that he incurred zero adverse action in connection with the alleged "refusal" to approve his evaluation. Plaintiff's employment remained status quo. Plaintiff's pay was never reduced, his benefits were never taken away, and his job duties remained the same during the period of time his performance evaluation was pending approval. Facts at ¶ 59. And Plaintiff received all of the $2,500.00 longevity bonus owed to him in connection

---

[4] Plaintiff's own allegations belie the legitimacy of this "retaliation" claim. Steel allegedly "refused" to accept the evaluation on March 8, 2022, three days *before* Plaintiff filed suit against the City on March 11, 2022.

with the City's ultimate approval of his 2021-2022 performance evaluation. Facts at ¶ 60. In the end, Plaintiff has failed to establish a valid First Amendment retaliation claim premised on his filing of a lawsuit against the City. The City is entitled to judgment on Count IV.

**D.  No custom or policy established (Counts I, II, IV)**

The City can only be liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." of which Plaintiff complains. *Monell v. Dep't. of Social Services, etc.*, 436 U.S. 658, 691 (1978); *Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005); *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). To establish the City's § 1983 liability based on a "custom," Plaintiff must possess evidence establishing an unconstitutional practice so widespread that, "although not authorized by written law or express municipal policy," it is "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F. 2d 1474, 1481 (11th Cir. 1991). Likewise, the evidence must reflect a practice so "long-standing and widespread" that it can be "deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id*. A failure to prevent an isolated incident, however, cannot be deemed tacit approval. *Depew v. City of St. Mary's*, 787 F. 2d 1496, 1499 (11th Cir. 1986) ("Random or isolated incidents are insufficient to establish a custom or policy.").

*Sub judice,* there is <u>no</u> record evidence to establish any long-standing custom or policy of the City violating its employees' due process rights or First Amendment free speech rights. In the absence of such evidence, Plaintiff cannot establish that any City policy or custom was the "moving force" behind Plaintiff's purported constitutional deprivations as required by *Monell*. The City is entitled to judgment on Counts I, II, and IV.

**E.  No violation of Florida's public whistleblower act (Count III)**

To prevail on a claim under Florida's public Whistle-blower's Act, Plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) his protected activity was the "but-for" cause of the adverse action. *Palm Beach Cty. Sch. Bd. v. Wright*, 217 So. 3d 163, 164–65 (Fla. 4th DCA 2017), citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360-362 (2013); *Chaudhry v. Adventist Health Sys. Sunbelt, Inc.*, 305 So. 3d 809, 817 (Fla. 5th DCA 2020) ("we agree with the Fourth District's conclusion in *Wright* and find that *Nassar* requires the use of a "but for" rather than a "motivating factor" causation standard when analyzing claims under Florida's Whistle Blower's Act.").

Disclosures are protected by the Act only if they satisfy the requirements of section 112.3187(5), "nature of information disclosed," section 112.3187 (6), "to whom information must be disclosed," and section 112.3187(7), "employees and persons protected." A communication only serves as a valid disclosure under the Act if it first satisfies the requirements of section 112.3187. See *Tillery v. Fla. Dept. of Juvenile Justice*, 104 So. 3d 1253, 1255 (Fla. 1st DCA 2013) (confirming that a purported whistle-blower complaint must "meet the *prima facie* elements necessary to initiate operation of the Act."); *Stanton v. Florida Department of Health*, 38  Fla. Law Weekly D325 (Fla. 1st DCA 2013) (acknowledging the "comprehensive" obligations and duties imposed upon a whistle-blower claimant); *Walker v. Fla. Dept. of Veteran's Affairs*, 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006) (affirming lower court's rejection of whistle-blower claim where claimant "failed to make a protected disclosure in the manner required by the statute.").

Because Florida applies a Title VII analysis to claims asserted under the Whistle-blower's Act, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. *Sch. Bd. of Palm Beach County v. Groover,* 337 So. 3d 799, 804 (Fla. 4th DCA 2022). Under *McDonnell Douglas*, Plaintiff must first establish, by the greater weight of the evidence, a *prima facie* case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. If Plaintiff successfully

presents a *prima facie* case, the City must produce evidence of some "legitimate, [nonretaliatory]

reason" for the claimed adverse employment action. *Id*. at 802. Once the City carries its burden of

production, Plaintiff must prove that the proffered reasons were merely a pretext for the City's

alleged retaliatory action. *Id*. at 804. The ultimate burden of proving intentional retaliation remains

with Plaintiff at all times. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### 1. No protected activity

First, Plaintiff cannot establish a *prima facie* claim of whistle-blowing because he did not

engage in any protected activity as proscribed by the Act. Section 112.3187(5), Florida Statutes,

describes the information that must be disclosed to obtain whistle-blower protection:

> The information disclosed under this section must include:
>
> (a) Any **violation or suspected violation of any federal, state, or local law, rule, or regulation** committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
>
> (b) **Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds**, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. § 112.3187(5) (emphasis added); see also *Broward Cnty. Sheriff's Off. v. Hamby*, 300 So.

3d 213, 216 (Fla. 4th DCA 2020). Moreover, the Act "protects employees and persons who disclose

information on their own initiative in a **written and signed complaint**."§ 112.3187 (7), Fla. Stat.

(emphasis added). The purpose of the statutory requirement of a signed writing "is to document

what the employee disclosed, and to whom the employee disclosed it, thus avoiding problems of

proof for purposes of the Whistle-blower's Act." See *Walker,* 925 So. 2d at 1150 (quoting

*Hutchinson v. Prudential Ins. Co. of America, Inc.*, 645 So. 2d 1047, 1050 (Fla. 3d DCA 1994)).

Here, Plaintiff contends that a September 28, 2021, letter constitutes protected whistleblower

activity. Facts at ¶ 42.  Plaintiff explicitly admits that the letter was authored by his lawyer and not

him. Facts at ¶ 43. The letter is not even signed by Plaintiff in violation of Fla. Stat. §112.3187 (7). Facts at ¶ 42. Likewise, the letter substantively does not disclose any purported **violation or suspected violation of any federal, state, or local law, rule, or regulation or Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds** as required by Fla. Fla. Stat. § 112.3187(5). Facts at ¶ 42. The September 28, 2021, letter is not protected activity. The City is entitled to judgment on Count III.

### 2. No causation

Even if the September 28, 2021, letter was protected activity (it is _not_), Plaintiff has failed to establish that such letter was the but-for cause of any alleged adverse action. "But-for" causation requires that the proscribed animus have a **determinative influence** on the employer's adverse decision. See _Sims v. MVM, Inc._, 704 F.3d 1327, 1335–36 (11th Cir. 2013) (emphasis added); _Hazen Paper Co. v. Biggins_, 507 U.S. 604, 610 (1993) (same).

First, even if deemed adverse employment action, Plaintiff cannot establish any claimed whistleblower retaliation when he was sent home following the September 1, 2021, taser incident. Plaintiff was sent home on September 10, 2021. Facts at ¶ 35. The "whistleblower complaint" authored by Plaintiff's lawyer was sent 18 days **later** on September 28, 2021. Facts at ¶ 42. As a pure matter of law, there can be no causal connection when the purported adverse action occurred **before** the claimed protected activity. _Drago v. Jenne_, 453 F.3d 1301, 1308 (11th Cir. 2006) ("We hold that, in a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation"). Chief Barreira never considered Plaintiff to be a whistleblower, was unaware of (and remains unaware of) any whistleblower complaint Plaintiff may now claim to have submitted to the City, and has never

otherwise taken any claimed adverse action against Plaintiff because Plaintiff submitted any purported whistleblower complaint. Facts at ¶ 44.

Chief Barreira resigned in October 2021 and played no role in any personnel decision relating to Plaintiff after he resigned. Facts at ¶ 39. Regarding Plaintiff's January 2022 demotion after he was criminally charged for the taser incident, there is no record evidence to establish that Plaintiff was demoted because of the September 28, 2021, letter, his attorney sent to City Manager Pate four months earlier. As a pure matter of law, that period of time is too protected to establish causation. See, e.g., *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1363 (11th Cir. 2007) (finding that three-month separation between protected activity and adverse employment action was too large to establish any causal relationship between two events for retaliation purposes); *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (four-month period insufficient).

Plaintiff's own testimony is otherwise dispositive on all accounts. City Manager Pate demoted Plaintiff in January 2022 after Plaintiff was criminally charged. Facts at ¶¶ 51-52. But Plaintiff explicitly admits that City Manager Pate never took any adverse action against him because of the September 28, 2021, letter. Facts at ¶ 45. Plaintiff otherwise concedes that no other City employee or official took any action against him because of the September 28, 2021, letter. Facts at ¶ 46. As Plaintiff cannot establish any causation (let alone "but-for" causation) necessary to maintain a *prima facie* claim of whistle-blowing, the City is entitled to judgment on Count III.

### 3. The City's legitimate reason for demotion and Plaintiff's failure to establish pretext

City Manager Pate demoted Plaintiff in January 2022 after Plaintiff was criminally charged. Facts at ¶¶ 51-52. Even assuming *arguendo* Plaintiff established a *prima facie* case of whistleblowing (he has <u>not</u> and <u>cannot</u>), under *McDonnell Douglas*, the burden reverts to Plaintiff to prove– **with evidence**– that the City's stated reason is pretextual. *Kidd v. Mando Am. Corp.*, 731

F.3d 1196, 1202 (11th Cir. 2013). An employer's stated reason is not a pretext unless it is shown that **both**: (1) the reason was false; **and** (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). Mere "conclusory allegations and assertions" will not suffice. *Id.* To show pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [the defendant's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997); *Springer v. Convegys. Customer Mgmt. Grp., Inc.,* 509 F.3d 1344, 1350 (11th Cir. 2007) (If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must "**meet it head on and rebut it.")** (emphasis added).

Here, while Plaintiff may disagree with the City's decisions and may believe them to be unfair, there is **no** **record** **evidence** that would allow a reasonable fact-finder to conclude that the City's reasons were not the real reasons, and there is **no** **record** **evidence** whatsoever upon which to base a finding that the City's decisions were unlawfully motivated. In the end, Plaintiff simply disagrees with the City's legitimate reasons for taking claimed adverse action against him. Disagreement is not refutation. The City is not required to prove that it made the right decisions with respect to its actions: the City's decisions may be based on good, bad, or erroneous reasons, so long as they were not for retaliatory reasons. *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984); see also *Elrod v. Sears*, 939 F.2d at 1470 (courts may not sit as a super personnel department and judge the wisdom of the employer's business decisions). There is simply no record evidence to suggest that the City's articulated reasons for its personnel decisions pertaining to Plaintiff are false and that the City's decisions were based upon any unlawful motive. The City is entitled to judgment on Count III.

WHEREFORE, Defendant, CITY OF OPA-LOCKA, respectfully requests the entry of an order granting summary judgment in its favor; the entry of final judgment upon that order; and such further relief as this Court deems just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of June 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

BY: */s/Christopher J. Stearns*
CHRISTOPHER J. STEARNS
Florida Bar No.:  557870

*/s/Jonathan H. Railey*
JONATHAN H. RAILEY
Florida Bar No.: 111717

JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone:     (954) 463-0100
Facsimile:      (954) 463-2444
stearns@jambg.com / berens@jambg.com
railey@jambg.com / garrido@jambg.com

**Attorneys for City of Opa-Locka**

## SERVICE LIST

**BRIAN H. POLLOCK, ESQ.**
**FAIRLAW FIRM**
Attorney for Plaintiff
135 San Lorenzo Ave.
Suite 770
Coral Gables, FL 33146
(305) 230-4884 (Phone)
brian@fairlawattorney.com

**CHRISTOPHER J. STEARNS, ESQ.**
**JONATHAN H. RAILEY, ESQ.**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
**Attorneys for Defendants**
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 (Phone)
stearns@jambg.com / young@jambg.com
railey@jambg.com/lit-assistant@jambg.com