UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 0:22-cv-20748-JAL

SERGIO PEREZ,

    Plaintiff,

vs.

CITY OF OPA-LOCKA and
STEVEN BARREIRA,

    Defendants.

ZOOM DEPOSITION

OF

JOHN PATE

Wednesday - June 14, 2023
1:35 P.M. - 3:10 P.M.
Zoom Videoconference

Stenographically Reported By:

MARSHA C. BRANNON

```
 1       A.    No.
 2       Q.    In the last 24 hours have you consumed any
 3  drugs or alcohol that would inhibit your ability to
 4  provide truthful testimony?
 5       A.    No.
 6       Q.    And I see we've been joined by David
 7  Reiner on this screen.  Is he representing you today
 8  in connection with this case?
 9       A.    Yes.
10       Q.    Okay.  Where are you currently giving this
11  deposition?
12       A.    Chicago, Illinois.
13       Q.    Are you currently employed?
14       A.    No.
15       Q.    When's the last time you've been employed?
16       A.    January of 2022.
17       Q.    Was that with the City of Opa-Locka?
18       A.    Yes.
19       Q.    When did you first begin working for the
20  City of Opa-Locka?
21       A.    October of 2019.
22       Q.    And in what capacity were you hired by the
23  city?
24       A.    City manager.
25       Q.    And at what point did you stop working for
```

John Pate
June 14, 2023

```
 1    the city?
 2         A.    January 14th -- February 1st of 2022.
 3         Q.    And why did you stop working for the city
 4    at that time?
 5         A.    The city separated my employment not for
 6    cause.
 7         Q.    As the city manager, did you have final
 8    decision making authority regarding all employment
 9    decisions pertaining to all employees outside of a
10    few charter positions?
11         A.    Yes.
12         Q.    Did you have final decision making
13    authority with respect to chief of police?
14         A.    Yes.
15         Q.    And what about all of the police officers
16    underneath the chief of police?
17         A.    Final authority, but it's typically
18    intermediary authority, recommendation from the
19    chief of police.
20         Q.    But as city manager you had to be the one
21    to approve or disprove the recommendation; correct?
22         A.    That's correct.
23         Q.    It was also made -- those employment
24    decisions regarding the hiring and firing or
25    promotions, demotions, those decisions ultimately
```

1  (inaudible) his file, then the city attorney's
2  office is directed per city statute based ordinance
3  to conduct an informal fact finding in regards to a
4  whistleblower complaint.
5           So, anything in regards to Chief Barreira
6  being questioned, seeing the document, being aware
7  of the document, that is something that falls under
8  the guise of Burnadette Norris-Weeks cause she would
9  be the one to interview the whistleblower, which in
10 this case would be Captain Perez.
11          In the case of Chief Barreira being the
12 subject of the complaint, I would assume that the
13 city attorney would question him in regards to what
14 occurred in order to provide some type of direction
15 to the three person panel that has to be appointed.
16      Q.  Let me get back to my original question
17 and I appreciate that explanation, but my question
18 was very direct.  It was:  Mr. Pate, do you have any
19 knowledge or evidence that Steven Barreira has seen
20 this document before?
21      A.  I have not shown him the document, but
22 that does not mean he's now been shown this
23 document.
24      Q.  Do you have any evidence that anyone has
25 ever shown Steven Barreira this document?

1  A. No.
2  Q. Do you have any knowledge that Steven
3  Barreira has any knowledge of this document
4  whatsoever?
5  A. I have no idea.
6  Q. Okay. Now, what action -- You stated
7  earlier that you nonetheless believe Steven Barreira
8  took action against Sergio Perez in connection with
9  Exhibit 3.
10  What action do you contend Steven Barreira
11  took against to Sergio Perez in connection with this
12  September 28, 2021 letter?
13  A. Okay. So, again, I have expressed
14  numerous times that Mr. Perez has came to me in
15  regards to an issue related to Chief Barreira. I
16  even spoke to a couple of meetings we had in regards
17  to the matters that Captain Perez brought up with
18  Chief Barreira in the office.
19  So, there is situations in which, again,
20  Captain Perez has been relieved from duty,
21  (inaudible) his off duty employment has been
22  effected, his reputation has been effected based on
23  being relieved from duty, various different ways, as
24  well as the use of a vehicle is a ramification of a
25  decision that Chief Barreira made.

1  So, at this point I believe, because of
2  Mr. Perez's previous complaint regarding some issues
3  and various other complaints that he's made to me
4  verbally and in writing in the past to me and Chief
5  Barreira does have some type of play or factor in
6  his whistleblower complaint being factual.
7      Q.  Okay.  Did Steven Barreira ever discuss
8  that September 28, 2021 letter with you?
9      A.  No.
10     Q.  You said you believe Steven Barreira took
11 action against Sergio Perez for various complaints.
12         Do you again have any evidence
13 specifically that Steven Barreira took any action
14 against Sergio Perez specifically because Sergio
15 Perez or his lawyer authored that September 28, 2021
16 letter?
17     A.  Nothing directly.
18     Q.  You stated that you forwarded Exhibit 3 to
19 Burnadette Norris-Weeks; correct?
20     A.  Correct.
21     Q.  Do you have any knowledge or recollection
22 of forwarding the document to anybody else?
23     A.  Not that I know of.
24     Q.  Paragraph 21, City of Opa-Locka did not
25 thereafter follow the applicable ordinance Chapter