UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 1:22-cv-20748-JAL

SERGIO PEREZ,

    Plaintiff,

v.

CITY OF OPA-LOCKA and
STEVEN BARREIRA,

    Defendants.
_____/

## DECLARATION OF STEVEN BARREIRA

I, Steven Barreira, pursuant to 28 U.S.C. § 1746(2), declare under penalty of perjury, as follows:

1. My name is Steven Barreira and I have personal knowledge of all facts stated herein.

2. I held the position of Chief of Police for the City of Opa-Locka (City) from April 2021 through my voluntary resignation on October 21, 2021.

3. I am familiar with Plaintiff, Sergio Perez (Plaintiff), because Plaintiff was a police Captain with the City's police department during my tenure as Chief of Police. I am familiar with Plaintiff's allegations in the operative Second Amended Complaint that the City violated his claimed procedural due process rights, violated his claimed First Amendment rights, and retaliated against him for alleged whistleblowing.

4.  I am familiar with Plaintiff's allegations that he "complained" or "objected" about alleged financial waste pertaining to the City's expenditures of $1,200.00 per month on storing seized contraband at the flea market, deployment of a police K-9, and a proposed contract with Lexipol to provide services to the City's police department as a means to obtain accreditation.

5.  In my capacity as the City's Chief of Police, I specifically instructed Plaintiff to investigate the City's expenditures of $1,200.00 per month on the storage of contraband. These costs were being incurred by the City prior to my arrival at the City. I received word that the seizures were not legitimate. I therefore wanted to understand the seizure process, ensure that the process was legitimate, and confirm whether the City was lawfully entitled to seize the contraband. Again, I assigned this task to Plaintiff in his capacity as a police Captain but he never completed the assignment. While Plaintiff mentioned the money the City paid for the storage, Plaintiff never "complained" to me or "objected" that the City was wasting money in connection with the storage of the contraband. If Plaintiff truly took "issue" with this expenditure, I assumed he would have brought it to the attention of the City Manager who he was constantly in communication with.

6.  Plaintiff never "complained" to me or "objected" that the City was wasting funds associated with a police K-9 purchased by the City's police department. The City Manager, John Pate, authorized the purchase of the police K-9. Plaintiff participated in this purchase with the City Manager without my knowledge. In my capacity as the City's Chief of Police, I instructed Plaintiff in his capacity as a police Captain to draft an

updated K-9 policy for my review. In my view, the City's K-9 policy in place at the time the K-9 was purchased was outdated and inadequate. Plaintiff wanted to deploy the K-9 into service without an adequate or sufficient policy in place.

7. Additionally, in my view, the K-9 was not adequately trained yet. Police K-9s inherently expose the City to potential additional liability. I wanted to ensure that the City's police department had an adequate K-9 policy in place and that the K-9 was sufficiently trained before the K-9 was deployed. While Plaintiff was not satisfied with my decision to ensure proper protocols were in place before deploying the K-9, he did not "complain" to me that this expenditure was wasteful. He wanted to deploy the dog because he said the City spent a lot of money on it. If Plaintiff truly took "issue" with this expenditure, I assumed he would have brought it to the attention of the City Manager who he was constantly in communication with. The K-9 was withheld from deployment for period of no more than a few weeks.

8. Plaintiff never "complained" to me or "objected" that the City was wasting money in connection with a proposed Lexipol contract. Lexipol was something that was already being discussed and considered at the City before I began working for the City because the City Manager, John Pate, had prior experience with Lexipol. The City Manager advocated for Lexipol, and it was his idea to explore and potentially retain the services provided by Lexipol. Within a short time after I commenced employment at the City, a proposed Lexipol agreement was sent to me. The City Manager knew about this. I signed the agreement and gave it to my staff assistant to send to the City Manager for approval. For whatever reason, the agreement did not make it to Pate but rather was sent

to Lexipol. When the inadvertent error was realized, Lexipol advised that it would nullify the agreement and treat it as void. Again, the City Manager possessed the final approval regarding any expenditure to Lexipol. The City never spent any monies in connection with my inadvertent execution of that particular agreement and Lexipol never provided any services to the City. It was a non-issue.

9. I never once considered Plaintiff to be exercising First Amendment rights in connection with any of these claimed issues. Again, as the City's Chief of Police, I assigned these duties and tasks to Plaintiff in his role as a police Captain during working hours for the City. Plaintiff did not perform these duties as a private citizen but rather in his capacity as a police Captain. As an administrative Captain, Plaintiff was actively involved in these issues and I relied on him as a member of my command staff to provide me with information I requested him to obtain or investigate.

10. I never took any claimed retaliatory action against Plaintiff in connection with any alleged "complaint" or "objection" Plaintiff contends he made regarding the above issues.

11. On September 1, 2021, Plaintiff held the position of administrative police Captain. I subsequently learned that Plaintiff discharged a department-issued taser at then-Sergeant Michael Steel ("Steel") while inside of the City's police station taser ("taser incident").

12. I found the allegations regarding the September 1, 2021, taser incident to be serious and I therefore initiated an internal affairs investigation. In my over 25 years of law enforcement experience (the majority of which I held supervisory positions), I had

never experienced or heard of a member of a command staff like Plaintiff discharging a taser at a fellow officer. The incident was unprecedented.

13. Given the serious nature of the allegations levied against Plaintiff in connection with the taser incident and the fact that the incident was being investigated by both the City and the Florida Department of Law Enforcement, within ten days after the September 1, 2021 incident, I instructed Plaintiff to perform his administrative duties from home. I did not "suspend" Plaintiff as alleged in the Second Amended Complaint. City Manager Pate was aware that Plaintiff was working from home.

14. I did not instruct Plaintiff to work from home in retaliation for any protected activity he claims to have engaged in or because he engaged in alleged protected speech. My instruction to Plaintiff to work from home in September 2021 stemmed solely from the taser incident. I would have sent Plaintiff home regardless of any alleged protected speech given the seriousness of the taser incident allegations. I did not find it appropriate for Plaintiff to be at the City during the pendency of an investigation that he was the subject of.

15. Plaintiff maintained the same title of Captain, and there was no change to Plaintiff's pay or status during my entire tenure as the City's Chief of Police.

16. I voluntarily resigned from the City on October 21, 2021. I had no further involvement regarding any personnel decision relating to Plaintiff's employment after my resignation.

17. My understanding is that Plaintiff was ultimately charged with criminal battery in connection with the taser incident in January 2022, and that such criminal

charges remain pending against Plaintiff.

18. I never violated any claimed procedural due process right of Plaintiff's. The City did not violate any claimed procedural due process right of Plaintiff's.

19. I never considered Plaintiff to be a whistleblower. Indeed, I was unaware, and remain unaware, of any whistleblower complaint Plaintiff may now claim to have submitted to the City.

20. I never otherwise took any claimed adverse action against Plaintiff because he submitted any purported whistleblower complaint.

21. I never retaliated against Plaintiff in any way. The City never retaliated against Plaintiff in any way.

22. I have never harbored any retaliatory animus against Plaintiff. I have never heard, nor am I aware of, any City employee or official who harbored any intent to retaliate against Plaintiff.

23. Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true and correct

**FURTHER DECLARANT SAYETH NAUGHT**

Executed on 06/23/23

_____
Steven Barreira