UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-20748-LENARD/LOUIS

SERGIO PEREZ,

      Plaintiff,

vs.

CITY OF OPA-LOCKA,

      Defendant.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Despite Defendant's spin on the facts adduced in discovery, and now made part of the record in this case, Defendant is a financially troubled municipality that struggles with a history of retaliation that impacted and damaged Capt. Perez. Disputed genuine issues of material fact preclude summary judgment for Defendant. Recognizing that the deposition testimony would not support its Motion, Defendant offers the declaration of Mr. Barreira, which is properly disregarded as a sham. Defendant's former City Manager and its corporate representative testified that Capt. Perez suffered retaliation following his complaints. The evidence adduced in discovery does not alter the Court's initial analysis that Capt. Perez's First Amendment retaliation and Florida Whistleblower Act claims at Counts II and III are viable and properly decided by a jury. Consequently, the Court properly denies Defendant's Motion for Summary Judgment regarding Counts II and III.

## II. SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56, summary judgment may only be granted when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether the moving party has met this burden, all evidence and factual inferences must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002). The party opposing the motion for summary judgment need not respond to with evidence *unless and until* the movant has supported the motion with sufficient evidence. *Adickes*, 398 U.S. at 160. Unless the moving party has demonstrated that the facts underlying the relevant legal questions raised by the pleadings or otherwise are not in dispute, summary judgment must be denied (even when the non-moving party has introduced no evidence whatsoever). *Brunswick Corp. v. Vineberg*, 370 F.2d 605, 611-12 (5th Cir. 1967).

The respondent must come forward with opposing summary judgment evidence only after the moving party has met its burden. If the record presents factual issues, then the Court cannot decide them and must deny the motion and must allow the conflicting facts to be decided at trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). Defendant has not met its burden.

When the record reveals disputed factual issues, the Court must deny Defendant's motion for summary judgment and allow the conflicting facts to be decided at trial. *Environmental Def. Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981). The Court must also resolve all ambiguities and draw all justifiable inferences in favor of Capt. Perez. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). The Court cannot weigh the competing facts at the summary stage and instead must deny

summary judgment:

> It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, where there are "varying accounts of what happened," **the proper standard requires us to adopt the account most favorable to the non-movants**. *Perez v. Suszczynski*, 809 F.3d 1213, 1217 (11th Cir. 2016). [*Emphasis added.*]

*Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016). The Court does not make creditability

determinations at the summary judgment stage since only the jury can make them. *Feliciano v. City*

*of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

Summary also cannot be entered when the parties agree on the basic facts but disagree

about the inferences that could/should be drawn from those facts. *Lighting Fixture & Elec. Supply Co.*

*v. Cont'l Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969). The court must deny summary judgment if

reasonable minds could differ on the inferences arising from the undisputed facts. *Impossible Elec.*

*Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).

### III. ARGUMENT

Defendant's Motion is largely a rehash of previously failed arguments repackaged in a

different format and supported by material facts that are clearly disputed. The most significant

problem that requires the Court's foremost attention is the Declaration of Steven Barreira, which

directly contradicts his prior deposition testimony without explanation and is, therefore, a sham.

The disputed facts and prevailing law require that a jury decide the issues presented in Counts II

and III. Not only does Defendant ignore the testimonial and documentary evidence that preclude

the entry of summary judgment, but it similarly ignores the more expansive basis upon which Capt.

Perez seeks relief at Count III. Therefore, while Capt. Perez agrees that he cannot pursue a claim

under Fla. Stat. §112.3187 *as a result of the letter* sent by his counsel, the lack of any argument by

Defendant against Capt. Perez proceeding with his claim for relief at Count III *aside from the letter* necessarily allows Capt. Perez to proceed with presenting those issues to the jury.

**A.**   **The Court Properly Disregards Mr. Barreira's Declaration As A Sham That Contradicts His Prior Deposition Testimony.**

The cornerstone of Defendant's attempt to pretermit this case is Mr. Barreira's Declaration. [ECF No. 53-6.] It is a sham. *Calvo v. B & R Supermarket, Inc.*, 63 F. Supp. 3d 1369, 1372 (S.D. Fla. 2014) (recognizing that the "sham affidavit rule applies with equal force to declarations.") Mr. Barreira had no prior experience working as a Chief of Police, and his career trajectory has taken such a downward spiral that he now works as a security officer. (Response Facts ¶62.) Defendant weaves Mr. Barreira's Declaration through their facts as if he had not previously testified in a deposition that commenced on October 27, 2022, and concluded on January 4, 2023, as contained in the record in this case.

Mr. Barreira testified in deposition that he did not recall specific communications while serving as the Defendant's Chief of Police. (Response Facts ¶11.) Mr. Barreira specified that he "asked or tasked Captain Perez to investigate… **the legality** of that particular seizure." *Id.* When asked whether he tasked Capt. Perez with looking into the legality or the cost analysis, Mr. Barreira testified that he was "not exactly sure." *Id.*

Nearly six months later, Defendant offers a "sham" Declaration to try and obtain a summary judgment with contradictory testimony from Mr. Barreira on specific instructions he attests to have provided to Capt. Perez, but to which he previously testified he "was not exactly sure." (*Compare* [ECF No. 53-6 at ¶6] with Response Fact ¶11.) Mr. Barreira's recent Declaration testimony cannot be reconciled with his prior deposition testimony that he instructed Capt. Perez to look into the "legality" and that he did not have specific recollection of conversations, and he

provides no explanation in his Declaration about his "epiphany" for why he suddenly could recall specific discussions that he claims to have had, notwithstanding his prior deposition testimony. (Response Fact ¶11.)

The Court must strike and not consider at the summary judgment stage a declaration or affidavit that conflicts with prior deposition testimony.

> When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.

*Van T. Junkins & Associates, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984 Mr. Barreira's Declaration should be stricken as a sham and a determination made that he committed perjury by offering an unexplained conflict between his deposition testimony and his Declaration. *Id.*

## B. __Capt. Perez's First Amendment Retaliation Claim At Count II Survives Summary Judgment Based On His Complaints About Matters Of Public Concern Outside Of His Job Duties, Resulting In Retaliatory Personnel Actions.__

Defendant provides nearly a verbatim reproduction of arguments the Court deemed unconvincing in denying Defendant's Motion to Dismiss. [*Compare* ECF Nos. 13 at 9-10 with 62 at 6-7.] Defendant offers no new law or facts that would alter the Court's prior findings that Capt. Perez complained about financial mismanagement as a citizen on a matter of public concern and suffered retaliation as a result. *Perez v. City of Opa-Locka*, 22-20748-CIV, 2022 WL 6646399, at *12 (S.D. Fla. Sept. 14, 2022). In essence, Defendant's position is that no public employee is entitled to protection from retaliation under the First Amendment if they complain or object to any wrongdoing they learn about at work, even outside their job duties. Not only does Defendant fail to support its position, but the facts on which it relies are far from undisputed.

Capt. Perez's First Amendment Retaliation Claim at Count II involves his speaking as a private citizen on matters of public concern that are entitled to special protections:

> The First Amendment reflects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *N.Y. Times v. Sullivan*, 376 U.S. 254, 270 (1964). Accordingly, "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Connick v. Myers*, 461 U.S. 138, 145 (1983).

*Darlow v. Babineck*, 2022 WL 15345444, at *2 (11th Cir. Oct. 27, 2022). While Defendant takes issue with the nature of the speech, the evidence establish that Capt. Perez made his complaints as a private citizen and not as part of his job duties, and that he complained about issues not within his job duties. (Response Facts ¶¶11, 63.) The evidence in this case from the former City Manager, John Pate, and from Defendant's corporate representative, Cory Krotenberg, is that the Defendant retaliated against Capt. Perez in response to his speaking out as a private citizen, and not part of his job duties, against the Defendant's financial waste. (Response Facts ¶¶16, 24, 28, 30, 73, 76.)

The necessary elements to establish a First Amendment retaliation claim are limited the following:

> (1) the employee's speech is on a matter of public concern; (2) the employee's First Amendment interest in engaging in the speech outweighs the employer's interest in prohibiting the speech to promote the efficiency of the public services it performs through its employees; and (3) the employee's speech played a "substantial part" in the employer's decision to demote or discharge the employee. Once the employee succeeds in showing the preceding factors, the burden then shifts to the employer to show, by a preponderance of the evidence, that "it would have reached the same decision ... even in the absence of the protected conduct."

*Battle v. Bd. of Regents for Georgia*, 468 F.3d 755, 760 (11th Cir. 2006) (collecting cases.)

1. Capt. Perez engaged in protected speech, which did not "owe its existence" to his job duties.

Capt. Perez's job duties did not involve financial responsibility, management, or reporting.

(Response Facts ¶63.) During the Defendant's corporate representative's deposition, the deponent testified that she was provided with a summary of a Police Captain's responsibilities (which necessarily occurred after this lawsuit was filed) and that summary omits any reference to any financial responsibilities. (Response Facts ¶63.) Capt. Perez confirmed that his job duties as a Police Captain did not involve financial responsibility, management, or reporting. *Id.* The Defendant's argument for summary judgment on Capt. Perez's First Amendment claim fails because the speech at issue was not made "pursuant to his job duties." [ECF No. 52 at 7.] Defendant's job description for Captain dispels any notion that Capt. Perez's job duties included any financial matters. (Response Facts ¶63.)

Courts look to various factors in determining whether speech "owes its existence" to an employee's job duties, and "Practical factors that may be relevant to, but are not dispositive of, the inquiry include the employee's job description, whether the speech occurred at the workplace, and whether the speech concerned the subject matter of the employee's job." *Alves v. Bd. of Regents of the Univ. Sys. of Georgia*, 804 F.3d 1149, 1161 (11th Cir. 2015). Although Defendant ignored any consideration of the factors identified by *Alves*, the Court should not.

Defendant focuses its attention on the fact that Capt. Perez learned about the financial mismanagement in his job and complained about the issues to his boss but ignores the clarification of the *Garcetti* factors provided by the Supreme Court in *Lane v. Franks*, 573 U.S. 228, 240 (2014):

> In other words, the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech. **The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties**, not whether it merely concerns those duties. [*Emphasis added.*]

The Court went even further in *Lane* to address the importance of protecting our public servants, like Capt Perez, who complain about financial improprieties:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech *241 by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

*Lane*, 573 U.S. at 240–41. Ultimately, the *Lane* court held that the speech at issue was eligible for First Amendment protection. *Id.* The critical factor is not where Capt. Perez learned about the financial waste or that he disclosed that financial waste to Mr. Barreira while at work. Neither the Supreme Court nor the Eleventh Circuit finds dispositive where the speech occurred.

> *Garcetti* controls our analysis of whether the inspectors spoke as citizens. In *Garcetti*, the Supreme Court considered whether a memorandum written by Ceballos, a deputy district attorney, about misrepresentations contained in an affidavit used by police to obtain a search warrant was protected by the First Amendment. *Id.* at 413–17, 126 S.Ct. at 1955–57. The Court identified as relevant two factors that, considered in isolation, are not dispositive: first, whether the speech occurs in the workplace; and second, whether the speech concerns the subject matter of the employee's job. *Id.* at 420–21, 126 S.Ct. at 1959. The Court reasoned, "**That Ceballos expressed his views inside his office, rather than publicly, [wa]s not dispositive[,]**" *id.* at 420, 126 S.Ct. at 1959, **because "[m]any citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like 'any member of the general public' to hold that all speech within the office is automatically exposed to restriction.**" *Id.* at 421, 126 S.Ct. at 1959 (internal citation omitted). The Court reasoned that "the memo concerned the subject matter of Ceballos's employment [also wa]s nondispositive," because the First Amendment protects some job-related expression. *Id.* The Court cited, for example, its statement in *Pickering v. Board of Education of Township High School District 205, Will County, Ill.*, 391 U.S. 563, 572, 88 S.Ct. 1731, 1736, 20 L.Ed.2d 811 (1968), that it is "essential" that teachers be able to speak freely about how school funds should be spent. *Garcetti*, 547 U.S. at 421, 126 S.Ct. at 1959. [*Emphasis added.*]

*Abdur-Rahman v. Walker*, 567 F.3d 1278, 1282 (11th Cir. 2009).

Defendant's reliance on *Abdur-Rahman* and the distinctions between the facts presented therein and those in the case *sub judice* exemplify why the Court properly denies the Defendant's

Motion. In *Abdur-Rahman*, "The inspectors' reports about sewer overflows concerned information they requested and investigations they performed for the purpose of fulfilling their assigned job duties." 567. F.3d at 1283. None of the complaints that Capt. Perez lodged with and about the financial mismanagement by Mr. Barreira were done to fulfill his job duties. (Response Facts ¶¶11, 63.]

If the Court were to consider the Declaration of Mr. Barreira, then at best, the issue of whether Capt. Perez's complaints about financial waste were made pursuant to his job duties is materially disputed, precluding summary judgment. *Metro. Life Ins. Co. v. Liebowitz*, 2023 WL 4420366, at *12 (11th Cir. July 10, 2023) (holding that "disputed issues of material fact" existed and reversing entry of summary judgment.) "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir.1993).) A genuine issue is "material" if it "might affect the outcome of the case." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Capt. Perez testified that Mr. Barreira's request was to "...analyze whether the items seized were legitimately or lawfully obtained by the city," and that Capt. Perez provided his response "...the same day." (Response Facts ¶11.) Mr. Barreira confirmed as much in his Declaration, provided after giving two depositions, wherein he stated that the investigation was to "understand the seizure process, ensure the process was legitimate, and confirm whether the City was lawfully entitled to seize the contraband." [ECF No. 53-6.] These facts do not support the notion that Mr. Barreira tasked Capt. Perez with investigating the expenditures of financial mismanagement at

issue, especially considering his email directive to Capt. Perez regarding investigating the legality of the seizure. (Response Facts ¶11.) Investigating whether items were "legitimately or lawfully obtained" differs from investigating the "expenditure."

Capt. Perez's job duties did not involve reporting financial expenditures (or improper spending). (Response Facts ¶11.) Out of concern for the impact of Mr. Barreira's financial irresponsibility on the taxpayers in a city under financial oversight, Capt. Perez repeatedly complained of financial mismanagement by Mr. Barreira and suffered retaliation as a result. (Response Facts ¶16.)

The job description for a Police Captain identifies no financial responsibilities – whether for expenditure or reporting. Capt. Perez testified that his job duties did not involve financial responsibilities or reporting. (Response Facts ¶63.)

2.    The evidence establishes that Mr. Perez suffered adverse employment actions (after Sept. 1, 2021).

The Court must consider the Defendant's actions together, not individually, in determining that Capt. Perez suffered adverse employment actions following his protected speech on matters of public concern. "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) (*quoting Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997). Therefore, "conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute an adverse action under Title VII." *Bass v. Bd. of Cnty. Com'rs, Orange Cnty., Fla.*, 256 F.3d 1095, 1118 (11th Cir. 2001). With regard to Capt. Perez's First Amendment retaliation claim,

"if an employer's conduct negatively affects an employee's salary, title, position, or job duties, that conduct constitutes an adverse employment action." *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1300 (11th Cir. 2005). The evidence establishes that Defendant engaged in adverse employment actions against Capt. Perez after and because he complained about matters outside of public concern outside of his job duties.

Capt. Perez suffered more than one "adverse employment action" that adversely affected the terms and conditions of his employment. According to Defendant's corporate representative, Capt. Perez complained to Mr. Barreira about "The wasting of money, the expenditures for the cargo containers to store evidence and the canine policy and the [Lexipol] contract." (Response Facts ¶¶16, 17, 22, 24, 25, 28, 30, 65, 66, 67, 68.)

One of the disputed material facts involves Mr. Barreira sending Capt. Perez home. (Response Facts ¶35.) The Defendant maintains that it merely sent Capt. Perez to work from home. [ECF No. 53 at ¶¶34-35.] But as Capt. Perez explained, "There's no way to be relieved of duty and relinquish all of your city property when you hold the rank of captain or any other rank and be able to perform your duties from home. That's inconceivable." (Response Facts ¶35.) The competing documentary evidence is that Mr. Barreira issued a memorandum relieving Capt. Perez of duty, that Det. Mohan Britton retrieved Capt. Perez's police-issued items when relieving Capt. Perez of duty, and that Det. Britton completed a document identifying the items he retrieved. (Response Facts ¶35.) Plus one of Defendant's corporate representatives testified that there was no "confusion in [his] mind that Sergio was relieved of duty with pay as of September 10th, 2021." (*Id.*)

The fact that Defendant's corporate representative's testimony conflicts with Mr. Barreira's testimony establishes that the reason for sending Capt. Perez home was "mere pretext" for retaliation. A legion of caselaw supports the finding that conficting testimony or inconsistencies on key facts undermine any claimed legitimacy to the adverse employment action(s) taken." In short, the inconsistencies… "demonstrate weaknesses or implausibilities in the proffered legitimate reason so as to permit a rational jury to conclude that the explanation given was not the real reason, or that the reason stated was insufficient to warrant the adverse action." W*arthaw v. Pillow Perfect Inc.*, 2018 WL 11486494, at *14 (N.D. Ga. July 26, 2018), *report and rec. adopted*, 2018 WL 11486491 (N.D. Ga. Sept. 11, 2018) (*quoting Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1279 (11th Cir. 2008) (; *see also King v. Butts Cty.*, 576 Fed. Appx. 923, 929 (11th Cir. 2014).

Defendant singled Capt. Perez out by relieving him of duty without pay after being accused by a fellow officer of a batter despite Defendant's past practice of **not** relieving officers of duty who were *actually under criminal investigation or charged with crimes*. (Response Facts ¶66.) After being relieved of duty on September 10, 2021, Capt. Perez was not allowed to work off-duty jobs, even after he returned to work several months later, resulting in a $3,500/week loss in pay. (Response Facts ¶¶65, 72.)

While Defendant maintains that Capt. Perez was not suspended with pay – or that this suspension – did not constitute an adverse action, the evidence establishes that relieving Capt. Perez of duty adversely affected his pay because it precluded him from making additional off-duty money. (Response Facts ¶¶16, 17, 22, 24, 25, 28, 30, 65-71.) *Cf. Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1455 (11th Cir.1998) (discussing circumstances evidencing adverse employment action).

3.     <u>Defendant and its former City Manager testified that Mr. Barreira retaliated against Capt. Perez because of the repeated complaints about financial irresponsibility.</u>

Defendant argues that Capt. Perez has no *direct* evidence that Mr. Barreira retaliated against him because he complained about Mr. Barreira's financial mismanagement. Capt. Perez candidly confessed that he did not have any direct evidence of retaliation.[1] (Response Facts ¶16, 22.) Defendant ignores that one of its corporate representatives and its former City Manager also linked Mr. Barreira's retaliatory actions to Capt. Perez's complaints about financial mismanagement. (Response Facts, *passim.*) Defendant simply ignores the circumstances surrounding the retaliatory events and pretends that they occurred in a vacuum and that others would not connect their occurrences to Capt. Perez's complaints.

Before Capt. Perez complained about Mr. Barreira's financial mismanagement, there existed no "issue between Chief Barreira and Mr. Perez…." (Response Facts ¶68.) Capt. Perez first complained about Mr. Barreira's financial mismanagement in June 2021. (Response Facts ¶69.) The evidence in this case is that Mr. Barreira retaliated against Capt. Perez only a few months after Capt. Perez began complaining about Mr. Barreira's financial irresponsibility. (Response Facts ¶¶17, 70.) *Compare Gallimore v. City of Opa-Locka*, 2023 WL 4441902, at *4 (S.D. Fla. June 16, 2023) (establishing close temporal proximity and that decisionmaker kenw sufficient to establish causation) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003).) Capt. Perez started sending emails complaining about Mr. Barreira's financial mismanagement concerning the storage fees in June 2021, and he continued sending them through August 30, 2021. (Response Facts ¶70.) Shortly after Capt. Perez began raising complaints about Mr. Barreira's financial waste

---

[1]     Defendant's former City Manager, Mr. Pate, explained that he would not expect Mr. Barreira to be so unsophisticated that he would blatantly attribute his retaliator conduct to Capt. Perez's complaints of financial mismanagement. (Response Facts ¶25.)

and mismanagement, Mr. Barreira relocated him to a moldy office that would isolate Capt. Perez from his staff. (Response Facts ¶71.)

Defendant does not offer any explanation for why it relieved Capt. Perez of duty and stripped him of all the equipment, uniforms, and vehicle issued to him as part of his position as a Police Captain following Mr. Pate's instruction to not take any adverse actions against Capt. Perez. (Response Facts ¶72.) Instead of following Mr. Pate's instructions, Mr. Barreira conducted a clandestine meeting with Mr. Steel *before* initiating the internal affairs investigation. Mr. Barreira met with Mr. Steel "off city property, on county property, on airport property within the city and not his office." (Response Facts ¶73.) Mr. Barreira did not document the date, time, or substance of his clandestine conversation with Mr. Steel that preceded the internal affairs investigation. (Response Facts ¶74.) This situation in which the Chief of Police met with the purported victim in a clandestine meeting did not comply with standard operating procedures for internal affairs investigations. (Response Facts ¶75.)

When considered together, the retaliatory nature of Mr. Barreira's behavior in disregarding the instructions from the City Manager, conducting an undocumented and clandestine meeting with the purported victim, and then relieving Capt. Perez of duty following his complaints and objections to gross financial waste, coupled with the comments Mr. Barreira made to Mr. Pate, is the type of conduct that the First Amendment was designed to protect against. Defendant does not offer any legitimate basis for why its former Chief of Police went to such lengths to suspend Capt. Perez over – what was in September 2021 – and remains a suspected event that to date has not resulted in a finding in any internal affairs or criminal conviction.

4.    <u>Capt. Perez suffered damages resulting from the retaliatory actions.</u>

The undisputed evidence is that Capt. Perez suffered damages because of the retaliatory actions taken by Defendant through Mr. Barreira. Not only did Mr. Barreira relieve Capt. Perez of duty on September 10, 2021, but he also precluded Capt. Perez from making the money he traditionally made ($3,500 per week) by working off-duty jobs. (Response Facts ¶76.)

     5.    <u>Mr. Perez's First Amendment retaliation claim also survives summary judgment when analyzed under a *Pickering-Connick* balancing test.</u>

Mr. Perez's claim for First Amendment retaliation is a prototypical one rooted in speaking on a matter of public concern that results in adverse employment actions:

> "The typical *Pickering–Connick* case involves a government employee causing workplace disruption by speaking as a citizen on a matter of public concern, followed by government action adversely affecting the employee's job." *Thompson v. Shock*, 852 F.3d 786, 791 (8th Cir. 2017). *see also Pickering v. Bd. of Educ. Of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). "In determining a public employee's rights of free speech, the problem is to arrive at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick*, 461 U.S. 138, 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (internal citations omitted).

*Noon v. City of Platte Woods, Missouri*, 2022 WL 17834547, at *6 (W.D. Mo. Dec. 21, 2022).

Just like in *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will County, Illinois*, 391 U.S. 563 (1968), Capt. Perez's protected speech involved financial concerns – which remain a matter of public concern – and so he is entitled to the same First Amendment protections as those given to the plaintiff in *Pickering*.

> We believe LeFande's allegations of procedural irregularities that unquestionably affect an integral component of police service are "relevan [t] to the public's evaluation" of the MPD and its Chief. *Hall*, 856 F.2d at 259 (quoting *McKinley*, 705 F.2d at 1114). We think them more relevant than intra-office squabbles in *Connick*, 461 U.S. at 148, 103 S.Ct. 1684, and *Barnes*, 840 F.2d at 982, and more public than the speech in *Murray*, 741 F.2d at 438. Presumably the public is, and should be, at least as concerned about these alleged defects as it was about, for instance, rule violations by a university athletic department, *see Hall*, 856 F.2d at 259, or teachers' dress and its purported relationship to the market for

> government debt, *see Connick*, 461 U.S. at 146, 103 S.Ct. 1684 (citing *Mt. Healthy*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

*LeFande v. D.C.*, 613 F.3d 1155, 1161 (D.C. Cir. 2010). Although Defendant did not suspend or relieve from duty other officers charged with misdemeanors or felonies, such as Jacksonville Pelaez or Hugo Alvarado, it suspended Capt. Perez and relieved him of duty *before* he was charged with a crime and while merely the subject of an internal affairs investigation. (Response Facts ¶¶33, 34, 35, 78.) There was no need to send Capt. Perez home, especially considering the City Manager's directive, given that Mr. Steel worked in the street as a sergeant and that Capt. Perez worked in the office and "had nothing to do with directing the terms and conditions of Sergeant's Steel's employment, directing Sergeant Steel or having any interactions with Sergeant Steel." (Response Facts ¶72.) Thus, there was no need to protect anyone from a "one in a thousand incident." (Resposne Facts ¶79.) As a "unique" incident, there was no realistic concern for safety or that it would be repeated. *Id.*

## C.   The Court Properly Denies Defendant's Motion Directed To Count III Because Defendant Ignores The Crux Of Capt. Perez's Public Whistleblower Act Claim.

Defendant mischaracterizes the nature of Capt. Perez's claim under Fla. Stat. §112.3187 (the "Public Whistleblower's Act"). Defendant focuses on Capt. Perez's claim for relief as if it were brought *solely* based on the letter his counsel sent to attempt to deny him relief. It is not. When properly analyzed against the allegations, statutory language, and the law thereon, the Court should deny Defendant's Motion related to the retaliation that Capt. Perez suffered after objecting to the gross mismanagement and financial waste. Ultimately, Defendant did not proffer a non-retaliatory reason for why Mr. Barreira relocated Capt. Perez to a moldy office isolated from his administrative staff members, relieved him of duty, stripped him of his uniform, badge, gun, and

vehicle, and precluded him from working off-duty overtime in its Motion. [ECF No. 52.]

Defendant focuses its entire argument on the notion that Fla. Stat. §112.3187 requires a "written and signed complaint" while ignoring the remainder of the statute, which provides relief for, *inter alia*, "employees 'who refuse to participate in any adverse action prohibited by this section.'" *Washington v. Florida Dep't of Revenue*, 337 So. 3d 502, 510 (Fla. 1st DCA 2022) (*quoting Rustowicz v. North Broward Hospital District*, 174 So. 3d 414, 421 (Fla. 4th DCA 2015).) The Fourth District Court of Appeal specifically supported its holding by employing the following reasoning:

> The language of section 112.3187(7) makes it clear that the legislature intended Whistleblower protection to be extended to employees other than those who sign a written complaint. The statute specifically extends protection to:
>
>> employees "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity,"
>>
>> employees "who refuse to participate in any adverse action prohibited by this section," and
>>
>> employees "who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs."
>
> If the legislature intended a *writing* requirement for those three categories of employees, it could have said so, as it did for the remaining two categories. It did not. [*Emphasis in original.*]

*Rustowicz*, 174 So. 3d at 421. *Accord Berber v. Wells Fargo, NA*, 798 Fed. Appx. 476, 480 fn. 2 (11th Cir. 2020) ("the private employee provision at issue here, the public employee counterpart tracks the language in the FWA as well, protecting employees who 'refuse to participate' in activity prohibited by the law. Fla Stat. § 112.3187(7).")

The record establishes that Capt. Perez objected and refused to participate Mr. Barreira's gross mismanagement and financial waste of taxpayer funds. (Response Facts ¶¶16, 17, 22, 24, 28, 30, 69, 70.) The record also establishes that Defendant was under financial oversight because of its

longstanding history of financial irresponsibility. (Response Facts ¶77.) Capt. Perez complained of Defendant's gross mismanagement and waste of public funds, which precipitated the retaliation he suffered. (Response Facts ¶¶16, 17, 22, 24, 28, 30, 69, 70.)

Rather than focus on the evidence establishing Capt. Perez's objections and refusals to participate in gross mismanagement and gross financial waste, Defendant instead solely addresses what it perceives to be a flaw in the whistleblower letter that Capt. Perez's counsel sent to the Defendant. However, the Second Amended Complaint makes clear that Capt. Perez did not solely address the sending of the September 21, 2021, letter as the basis for the Public Whistleblower's Act claim. [ECF No. 37.] Rather, his Public Whistleblower's Act claim focuses on the retaliation he suffered after he complained about the gross mismanagement and gross financial waste by Mr. Barreira. *Id.* Defendant makes no argument concerning this aspect of Capt. Perez's Public Whistleblower's Act claim, and so it waived the ability to present new argument thereon at this late juncture to sandbag him.

> But it is improper for a party to raise a new argument in its reply. *See Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for [the party] to raise this new argument in its Reply brief, the argument will not be considered") (citing *Herring v. Sec. Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court")).

*Katchmore Luhrs, LLC v. Allianz Glob. & Corp. Specialty*, 2016 WL 1756911, at *1 (S.D. Fla. May 3, 2016). The Court cannot consider any new argument not previously raised in Defendant's Motion. *See e.g.*, *Kadylak v. Royal Caribbean Cruise, Ltd.*, 167 F. Supp. 3d 1301, 1308 (S.D. Fla. 2016) (refusing to consider argument raised initially in reply memorandum); and *TCC Air Services, Inc. v. Schlesinger*, 2009 WL 565516, at *7 (S.D. Fla. Mar. 5, 2009) (refusing to consider new evidence raised initially in reply); *accord* repeatedly *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)

("[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citations omitted).

## IV. CONCLUSION

The existence of disputed issues of material fact, when considered against the prevailing law, requires the denial of Defendant's Motion as to Counts II and III. Capt. Perez spoke as a private citizen on issues outside of his job duties on matters of public concern regarding gross mismanagement and financial waste and suffered retaliation as a result. Defendant contends that it did not relieve Capt. Perez of duty on September 10, 2021, despite the evidence establishing that it relieved him of duty, collected the equipment issued to him, and then reinstated him. These facts relegate Defendant's rationale for sending Capt. Perez home and precluding him from working off-duty jobs to a mere pretext for retaliation. Defendant then focuses only one one aspect of Mr. Perez's claim at Count III under the Florida Public Whistleblower's Act, involving the signed and written complaint, thereby conceding that the remaining underpinnings of his claim at Count III are properly decided by the jury. Accordingly, the Defendant's Motion is properly denied as to Counts II and III as set forth above.

Respectfully submitted this 26th day of July 2023,

Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*
