UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-CV-20748-LENARD/LOUIS

SERGIO PEREZ,

    Plaintiff,

vs.

CITY OF OPA-LOCKA,

    Defendant.

_____/

# **PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Plaintiff, Sergio Perez, pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, responds to the Statement of Facts filed by the Defendant with the following:

## **Plaintiff's Statement Of Material Facts In Dispute**

(Nos. 1-61)

*and*

## **Plaintiff's Facts In Response**

(Nos. 62-79)

## **Plaintiff's Statement Of Material Facts In Dispute**

1. Undisputed, in part; Disputed only that Defendant demoted Capt. Perez to a Sergeant on or about January 12, 2022. (Ex. 1, Depo. Perez; 34-35: 22-8)

2. Undisputed in part; Disputed that Mr. Pate had "intermediary authority" and made decisions based on the "recommendation from the chief of police." (Ex. 2, Depo. Pate; 7: 15-19.)

3. Undisputed that Mr. Pate served as the City Manager from October 2019 to February 1, 2022. (Ex. 2, Depo. Pate; 6-7: 19-2.)

4-10. Undisputed.

11. Disputed. Mr. Barreira testified in deposition that he did not recall specific communications while serving as the Defendant's Chief of Police. (Ex. 3, Depo. Barreira II, 84: 6-18.) Defendant mischaracterizes Capt. Perez's testimony, which was that Mr. Barreira instructed him to "to analyze whether the items seized were legitimately or lawfully obtained by the city." (Ex. 1, Depo. Perez; 128-29: 6-14.) When asked whether he tasked Capt. Perez with looking into the legality or the cost analysis, Mr. Barreira testified that he was "not exactly sure." (Ex. 3, Depo. Barreira II; 84: 3-13.) Capt. Perez raised concerns to Mr. Barreira about the unnecessary expenditure of $1,200 per month on storage fees "more than five times… via email… and there were conversations in the workplace in addition to those emails." (Ex. 1, Depo. Perez; 130-31: 2-7.) Mr. Barreira did not instruct Capt. Perez to "investigate the City's expenditure of $1,200 per month." (Ex. 1, Depo. Perez; 128: 6-13: "Did he ever tell me to investigate it? No.") (Ex. 4, Dec. Perez at ¶¶9-10.) Mr. Barreira instructed Capt. Perez to "ensure that the Flea Market investigation was handled properly." (Ex. 4, Dec. Perez ¶9.)

12. Disputed. *See* Response to No. 11.

13. Undisputed that the Criminal Investigations Division was one of the departments overseen by Capt. Perez, and that it "made an arrest and confiscated what would have been tens of thousands of dollars in equipment that was stolen or otherwise unaccounted for…." (Ex. 1, Depo. Perez; 136-37: 16-19.) Undisputed that Capt. Perez played a part in seizing the contraband. *Id.*, 128: 3-5. Undisputed that Capt. Perez helped choose where to store the items. *Id.*, pp. 129-30: 15-1. Undisputed that Capt. Perez learned of the storage fees in his role as a police officer. *Id.*, 31: 13-16.

14. Undisputed that Capt. Perez learned about the unnecessary expenditure in his role; Disputed that he played a role in the oversight, participation, and decision-making process regarding the storage of contraband. (Ex. 1, Depo. Perez; 129-31: 9-16.)

15. Undisputed.

16. Undisputed that neither Mr. Barreira nor anyone else provided Capt. Perez direct evidence linking his complaints about financial mismanagement by Defendant to the retaliatory actions taken against Capt. Perez. Disputed that Capt. Perez's complaints were untethered to the retaliatory actions taken against him, as his complaints about financial mismanagement persisted through August 30, 2021. (Ex. 1, Depo. Perez; 130-31: 23-7.) Disputed that Capt. Perez has no evidence, since Defendant's corporate representative considered Mr. Barreira's actions retribution for Capt. Perez complaining about financial mismanagement. (Ex. 1, Depo. Perez; 125-26: 15-3; 137-38: 17-10; Ex. 5, Depo. Krotenberg; p. 29: 6-12; 27-28: 25-3.) Mr. Pate that Mr. Barreira told him after the complaints of financial mismanagement the following about Capt. Perez:

> That he didn't trust Captain Perez, that he didn't want Captain Perez around him, he didn't want him in his environment, he did not deserve to be a command staff officer, he didn't

>deserve to be on his command staff and various other comments he made during various meetings that's he's had with me, in passing, directly, indirectly after that manner.

(Ex. 2, Depo. Pate; 56-57: 6-11.)

17.     Disputed. Capt. Defendant purchased the K-9 unit before Mr. Barreira started working for Defendant. (Ex. 1, Depo. Perez; 116: 1-7.) Capt. Perez complained to ("challenged") Mr. Barreira about the waste of money associated with failing to deploy the K-9 purchased by Defendant's police department. (Ex. 1, Depo. Perez; 109-11: 18-11; Ex. 4, Dec. Perez ¶¶12-14.) When questioned about raising concerns to Mr. Barreira, Capt. Perez raised his concerns as a "combination" of verbally and in writing. (Ex. 1, Depo. Perez; 121-22: 23-3.) He raised the issue multiple times with Mr. Barreira. *Id.*, 122: 18-21. Capt. Perez specifically recalled a "heated argument" in which he complained to Mr. Barreira that "it was wrong, it was unreasonable, we spent all this money" immediately after the K-9 was certified. *Id.*, 122-23: 22-10. Capt. Perez knew that the K-9 cost about $10,000, plus about $50,000 for "retrofitting" a police vehicle, plus "additional funds" for equipment for the K-9. (Ex. 1, Depo. Perez; 117: 1-16.) Capt. Perez complained to Mr. Barreira that the failure to deploy the K-9 unit "was unreasonable and a waste of funds" and that he complained "as part of what our obligations were to taxpayers" because he "wanted our resources to be deployed appropriately for the money we spent on them." *Id.*, 125-26: 15-3. Defendant's corporate representative confirmed that Capt. Perez complained to Mr. Barreira: "The wasting of money, the expenditures for the cargo containers to store evidence and the canine policy and the Lexapro [sp] contract." (Ex. 5, Depo. Krotenberg; p. 29: 6-12.)

18.     Disputed. Mr. Barreira "did not feel comfortable with deploying the K-9 unit" until a policy was created to his satisfaction. (Ex. 3, Depo. Barreira II; 60-61: 1-20.) Mr. Barreira did not know whether the Defendant already had a "K9 policy." (Ex. 3, Depo. Barreira II; 62: 13-20.)

19.-21. Undisputed.

22. Undisputed that Capt. Perez has no *direct* evidence but Disputed that he has no circumstantial/indirect evidence. (Ex. 1, Depo. Perez; 141: 8-11: "Direct evidence, no.") Capt. Perez testified about "indirect evidence" and described a pattern of events that followed his complaints to and about Mr. Barreira's financial mismanagement. (Ex. 1, Depo. Perez; 104: 3-20.) Mr. Pate also testified about indirect evidence. (Ex. 2, Depo. Pate; 56-57: 6-11.)

23. Undisputed.

24. Disputed. Capt. Perez objected and complained to Mr. Barreira "several times" about the waste of taxpayer funds resulting from Mr. Barreira's failure to follow Defendant's procurement code and committing Defendant to an unnecessary $53,000 contract and that Mr. Barreira relieved Capt. Perez of duty on September 10, 2021, "as a result of raising concerns pertaining to the Lexipol issue." (Ex. 1, Depo. Perez; 104: 17-21: "100 percent".) Capt. Perez complained and objected to this waste of taxpayer money. (Ex. 4, Dec. Perez, ¶¶*15-16*.) Capt. Perez specified the evidence in support of his claim as "all of the emails that I submitted complaining and telling him that he was violating policy and he could not do what he was doing. I had a number of conversations, more so arguments in the building verbally with him telling him that he could not do what he was doing." (*Id.*, 110-11: 22-4.) Mr. Pate, former City Manager, confirmed that after Capt. Perez complained about the waste of taxpayer funds through the Lexipol agreement, Mr. Barreira retaliated against Capt. Perez by, *inter alia*, relocating his office to a mold-infested area, diminishing his job duties, and reducing his daily assignments. (Ex. 2, Depo. Pate; 26-31: 7-15.) Defendant's corporate representative confirmed that Capt. Perez complained to Mr. Barreira about: "The wasting of money, the expenditures for the cargo containers to store

evidence and the canine policy and the Lexapro [sp] contract." (Ex. 5, Depo. Krotenberg; 29: 6-10.)

25. Disputed. Capt. Perez notified Mr. Pate that Mr. Barreira improperly committed Defendant to spend unnecessary money on Lexipol through an improper approval process and that Mr. Barreira retaliated against Capt. Perez afterward. (Ex. 2, Depo. Pate; 29-30: 13-15: "If you're asking me if it's potentially possible that he retaliated, I would say yes, because the issues that Chief Barreira and Mr. Perez started having occurred after Mr. Perez brought the misuse issue to my attention.") Mr. Pate did not expect Mr. Barreira to confess to retaliating. (Ex. 2, Depo. Pate; 81-3: 24-10.) Furthermore, Mr. Barreira's Declaration testimony conflicts with his deposition testimony that the Lexipol agreement was honored. (Ex. 3, Depo. Barreira II; 60-61: 1-16.)

26.-27. Undisputed.

28. Disputed. Mr. Pate testified about the retaliation that Capt. Perez suffered after complaining about financial mismanagement by Mr. Barreira. (Ex. 2, Depo. Pate; 29-32: 13-4: "If you're asking me if it's potentially possible that he retaliated, I would say yes, because the issues that Chief Barreira and Mr. Perez started having occurred after Mr. Perez brought the misuse issue to my attention… The issues regarding Chief Barreira and Mr. Perez did not occur until after the reporting of the misuse issue. That's all I'm saying.") *See also* Response Fact No. 25.

29. Disputed.[1] Mr. Barriera is incompetent to testify whether Capt. Perez was a whistleblower, considering his Associate of Science degree from St. Johns River State College and the online courses he took to obtain his bachelor's degree in criminal justice from Saint Leo

---

[1] The Court properly ignores legal arguments and conclusions in summary judgment facts. *Hurry Family Revocable Tr. v. Frankel*, 2019 WL 12536800, at *2 (M.D. Fla. Nov. 25, 2019) (court would "ignore the assertions in those paragraphs to the extent that they make legal arguments or forward a legal conclusion").

University. (Ex. 7, Depo. Barreira I; 12-13: 3-5.)

30.     Disputed. Mr. Pate testified about the retaliation that Capt. Perez suffered after complaining about financial mismanagement by Mr. Barreira. *See* Response Fact No. 25. Furthermore, Capt. Perez discussed the retaliation he suffered after complaining that Mr. Barreira was wasting taxpayer money. described a pattern of events that followed his complaints to and about Mr. Barreira's financial mismanagement. (Ex. 1, Depo. Perez; 104: 3-20.) Defendant's corporate representative considered Mr. Barreira's actions to be retribution for Capt. Perez complaining about financial mismanagement. (Ex. 5, Depo. Krotenberg; 29: 6-12; 27-28: 25-3.) Capt. Perez also considered the actions to be retaliatory. Ex. 1, Depo. Perez; (125-26: 15-3; 137-38: 17-10.)

31.     Undisputed.

32.     Disputed. Mr. Barreira testified that he did not learn of an incident involving Capt. Perez and Michael Steel until after September 6, 2021. (Ex. 6, Dec. Pate ¶15.)

33.     Disputed. Capt. Perez was accused of misdemeanor battery, which was not "unprecedented" within the Defendant's Police Department, as two sergeants (Hugo Alvarez and Jacksonville Pelaez) had been under criminal investigation but not suspended. (Ex. 1, Depo. Perez; 167-1: 11-19.) Plus, Mr. Pate testified that Mr. Barreira's mishandling was likely due to the fact that he "had no experience as a chief law enforcement officer for any agency" and did not follow Mr. Pate's directions by first interviewing Mr. Steel before initiating an internal affairs investigation. (Ex. 2, Depo. Pate; 35-7: 12-19.)

34.     Disputed. Capt. Perez was accused of misdemeanor battery, which was not "unprecedented" within the Defendant's Police Department, as two sergeants (Hugo Alvarez and

Jacksonville Pelaez) had been under criminal investigation but not suspended. (Ex. 1, Depo. Perez; 167-1: 11-19.). Furthermore, Mr. Barreira took the retaliatory action of relieving Capt. Perez of duty despite the clear direction from City Manager Pate to take no actions until after the investigation had completed, making Mr. Barreira's retaliatory actions contrary to the express direction provided to him by his boss. (Ex. 2, Depo. Pate; 50-3: 17-7.) This was Mr. Barreira's first chance to collaborate with his "trusted friend," Mr. Steel, and retaliate against Capt. Perez. (Ex. 3, Depo. Barreira II; 37-38: 21-10; 46: 1-4.) Mr. Barreira "didn't want Captain Perez around him, he didn't want him in his environment, he did not deserve to be a command staff officer, he didn't deserve to be on his command staff." (Ex. 2, Depo. Pate: 56-57: 6-4.)

35.     Disputed. Mr. Barreira relieved Capt. Perez of duty and, in connection therewith, instructed Mohan Britton to retrieve Capt. Perez's police vehicle and emoluments of office, for which Mohan Britton prepared a property receipt. (Ex. 1, Depo. Perez; 177-80: 17-8; Ex. 8, Depo. Britton; 12-14: 12-22; Ex. 9, Britton Depo. Exhibit 101.) The records in this case also include a written directive by Mr. Barreira relieving Capt. Perez of duty. (Ex. 10.) If Capt. Perez was not relieved of duty, then there would have been no reason to restore him to active duty. (Ex. 11.) Capt. Perez explained, "There's no way to be relieved of duty and relinquish all of your city property when you hold the rank of captain or any other rank and be able to perform your duties from home. That's inconceivable." (Ex. 1, Depo. Perez; 84: 2-12.) Capt. Perez was "demoted" and "stripped of everything." He "wasn't' even allowed to come into the police station" and could work "no overtime, no off-duties, no nothing." (Ex. 1, Depo. Perez; 88: 7-19.) as Defendant's corporate representative testified, "there was no "confusion in [his] mind that Sergio was relieved of duty with pay as of September 10th, 2021." (Ex. 5, Depo. Krotenberg; 11-2: 22-8.)

36. Disputed. *See* responses to Nos. 34 and 35, above.

37. Disputed. *See* responses to Nos. 34 and 35, above

38. Disputed. *See* responses to Nos. 35 and 35, above.

39. Undisputed that Mr. Barreira resigned from Defendant's employ and has thereafter worked as a security officer. (Ex. 7, Depo. Barreira I; 16: 7-12.)

40. Disputed.[2]

41. Disputed. *See* Responses to Nos. 16, 24, 25, 28, 30, 34, 35, above.

42.-43. Undisputed.

44. Disputed.[3] *See* Response to No. 29 above.

45.-60. Undisputed.

61. Disputed. Defendant's employees confirmed this practice of retaliating. (Ex. 8, Depo. Britton; 21: 22-25; Ex. 2, Depo. Pate; 41-42: 24-15; Ex. 4, Dec. Perez ¶20.)

## **Plaintiff's Facts In Response**

62. Mr. Barreira had no prior experience working as a Chief of Police and now works as a security officer. (Ex. 7, Depo. Barreira I; 13-14: 12-12; 16: 7-15; Ex. 2, Depo. Pate; 37: 2-19.)

63. Capt. Perez's job duties did not include financial management, accounting, accounts payable, accounts receivable, financial reporting, budgeting, or the reporting of financial mismanagement by or within the Defendant's Police Department. (Ex. 4, Dec. Perez ¶5.) (Ex. 1, Depo. Perez; 104: 3-20: "I didn't have an obligation to report financial mismanagement and that wasn't a part of my job description or duties.") *see also* (Ex. 12, Depo. Lawson; 19-22: 2-12 and Ex.

---

[2]    *See* Fn. 1.
[3]    *See* Fn. 1.

13, Ex. 102 to Lawson Depo.)

64. Defendant terminated Mr. Steel's employment after an internal investigation revealed that he had a history of being a dishonest law enforcement officer who retaliated against his foes. (Ex. 5, Depo. Krotenberg; 31: 9-11)(Ex. 14, Steel Investigation Report.)

65. After being relieved of duty on September 10, 2021, Capt. Perez was not allowed to work off-duty jobs, even after returning to work. (Ex. 1, Depo. Perez; 93: 9-25.)

66. Defendant singled Capt. Perez out by relieving him of duty without pay while the subject of an internal affairs investigation since the Defendant's past practice was to relieve officers charged with misdemeanors with pay. (Ex. 5, Depo. Krotenberg; 15-6: 15-7.)

67. Relieving Capt. Perez of duty on September 10, 2021, adversely affected his pay because it precluded him from making additional off-duty money. (Ex. 1, Depo. Perez; pp. 84-5: 13-9; Ex. 5, Depo. Krotenberg; 27-8: 25-3.)

68. There was no "issue between Chief Barreira and Mr. Perez…" until after Capt. Perez started complaining about financial mismanagement. (Ex. 2, Depo. Pate; 29: 2-12.)

69. Capt. Perez complained of financial mismanagement in June 2021. (Ex. 4, Dec. Perez ¶9.)

70. Capt. Perez started sending emails complaining about Mr. Barreira's financial mismanagement concerning the storage fees in June 2021, and he continued sending them through August 30, 2021. (Ex. 1, Depo. Perez; 130-31: 23-7.)

71. Shortly after Capt. Perez began raising complaints about Mr. Barreira's financial waste and mismanagement, Mr. Barreira relocated him to a moldy office that isolated Capt. Perez from his staff. (Ex. 2, Depo. Pate; 27-28: 12-24.)

72. Mr. Barreira relieved Capt. Perez of duty and stripped him of all the equipment, uniforms, and vehicle issued to him as part of his position as a Police Captain in disregard of Mr. Pate's instruction not to take any adverse actions against Capt. Perez until after the Internal Affairs Investigation completed. (Ex. 2, Depo. Pate; 44-45: 15-13; 48-49: 20-1; 49-50: 2-15.) (Ex. 6, Dec. Pate ¶16.)

73. Mr. Barreira disregarded Mr. Pate's instructions and had a "clandestine" meeting with Mr. Steel *before* initiating the internal affairs investigation. (Ex. 2, Depo. Pate; 39-40: 25-21; Ex. 6, Dec. Pate ¶¶14-18.)

74. Mr. Barreira did not document the date, time, or substance of his "clandestine" conversation with Mr. Steel that preceded the internal affairs investigation. (Ex. 7, Depo. Barreira I; 98-101: 14-9.)

75. Internal Affairs investigation interviews are to be documented and should take place within the Police Department. (Ex. 5, Depo. Krotenberg; 40-43: 1-4.)

76. Capt. Perez lost approximately $3,500 a week after September 10, 2021, because he was not allowed to work off-duty jobs while suspended. (Ex. 1, Depo. Perez; 155: 11-25.)

77. Defendant was under financial oversight because of its longstanding history of financial irresponsibility. (Ex. 5, Depo. Krotenberg; 30-31: 9-4.)

78. Capt. Perez was charged with misdemeanor battery for the issue involving Mr. Steel in January 2022. (Ex. 1, Depo. Perez; 17: 15-24.)

79. The taser incident was a "one in a thousand incident" and would not expect to have any other instance in a "department of 40 individuals tasing each other within a short timeframe" since it was a "unique incident." (Ex. 2, Depo. Pate; 53: 8-22.)

Respectfully submitted this 26th day of July 2023,

Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Tel:    305.230.4884
*Counsel for Plaintiff*
