19UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE #: 1:22-cv-20748-JAL

SERGIO PEREZ,

    Plaintiff,

v.

CITY OF OPA-LOCKA and
STEVEN BARREIRA,

    Defendants.
_____/

**<u>DEFENDANT, CITY OF OPA-LOCKA'S, REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, CITY OF OPA-LOCKA ("Defendant" or "City"), by and through its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and this Court's Local Rule 56.1, replies to the Response to the City's Motion for Summary Judgment [DE 57] filed by Plaintiff, Sergio Perez ("Plaintiff"), and states: [1]

    A.  **<u>Plaintiff's concessions and abandonment of Counts I and IV</u>**

The Response wholly fails to address the City's motion for summary judgment arguments on Counts I and IV. [DE 57], generally.  Indeed, the words "Count I" and "Count IV" appear nowhere within the Response. *Id.* Plaintiff only argues against the entry of summary judgment in

---

[1] The lengthy Response is replete with inflammatory and hyperbolic rhetoric. See, e.g., [DE 57] at pg. 1 ('…Defendant is a financially troubled municipality that struggles with a history of retaliation…'); pg. 2 ("Defendant's motion is largely a rehash of previously failed arguments repackaged in a different format…"). The City will not substantively entertain that rhetoric. The City succinctly replies and addresses the salient issues before this Court. The City's decision to not address a particular argument or issue raised within Plaintiff's omnibus Response should not be viewed as a concession to the validity of that argument or issue. The City otherwise rests on its comprehensive motion for summary judgment [DE 52] and dispositive record evidence [DE 53] filed in support of the motion.

the City's favor on Counts II and III. See e.g., *Id.* at pg. 1 ( "Consequently, the Court properly denies [sic] Defendant's Motion for Summary Judgment regarding Counts II and III"); pg. 19 ("Accordingly, the Defendant's Motion is properly denied [sic] as to Counts II and III…").

A party's "[f]ailure to respond to an argument seeking summary judgment constitutes abandonment of that argument and warrants the entry of summary judgment." *Pecora v. Prime Sec. All., Inc.*, 2022 WL 19302229, at *7 (S.D. Fla. Mar. 3, 2022), citing *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (noting that "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned" and granting defendant's motion for summary judgment because plaintiffs failed to respond to certain arguments); see also *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."); Local Rule 7.1(c)(1) (failure to oppose a motion may be deemed sufficient cause to grant the motion by default).

As the Response wholly fails to acknowledge (let alone substantively address and rebut) the City's arguments entitling it to summary judgment on Counts I and IV, Plaintiff is deemed to have abandoned those claims. The City is entitled to judgment on Counts I and IV.

### B. No 42 U.S.C. § 1983 First Amendment retaliation claim (Count II)

#### 1. Plaintiff's additional concession: no policy or custom established for a *Monell* claim

The City argued that it is entitled to summary judgment on Count II[2] because there is no record evidence of a policy or custom that was the purported "moving force" behind Plaintiff's claimed constitutional deprivations. [DE 52] at pg. 15. The Response is entirely devoid of any

---

[2] And Counts I and IV (which Plaintiff has since abandoned).

argument opposing the City's *Monell* arguments. [DE 57], generally. Indeed, the words "Monell," "custom," and "policy"³ appear nowhere within the Response as related to Count II. *Id.*

By failing to substantively address or oppose (let alone even acknowledge) the City's section 1983 *Monell* arguments, Plaintiff has implicitly conceded that he has no evidence of any City policy or custom that was the "moving force" behind Plaintiff's purported constitutional deprivations as required by *Monell*. See, e.g., *Lisa, S.A. v. Gutierrez Mayorga*, 240 F. App'x 822, 824 (11th Cir. 2007) ("Failure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal"); *Rodriguez v. City of Miami, Fla.*, 907 F. Supp. 2d 1327, 1331 (S.D. Fla. 2012) (Lenard, J.) (granting summary judgment in the defendant's favor on *Monell* claim where plaintiff failed to offer any record evidence to support such claim); see also *Jones; GolTV, Inc.,* supra. As Plaintiff failed to advance <u>any</u> theory of municipal liability whatsoever, the City is entitled to judgment on Count II.

2. **No protected "speech"**

The Response puzzlingly (and wrongly) asserts that the City "ignored" the factors analyzed in determining whether speech is protected under the First Amendment. [DE 57] at pg. 7. The City extensively analyzed Plaintiff's claimed "speech." [DE 52] at pgs. 6-10. The City's analysis was primarily focused on Plaintiff's *own deposition testimony* regarding Plaintiff's oversight of various issues (including the K-9 unit Plaintiff described as his "baby") that Plaintiff now contends he "complained" about as a means to formulate a purported First Amendment retaliation claim. *Id.*

Plaintiff's own deposition testimony is dispositive. Recognizing as much, the Response attempts to diminish Plaintiff's testimony by emptily "arguing" that "investigating whether items

---

³ The word "policy" only appears in the context of a "canine policy." [DE 57] at pg. 11. Not in any *Monell* context or analysis.

were legitimate or lawfully obtained differs from investigating the expenditure." [DE 57] at pgs. 9-10. That attempted play on words or characterization is nonsensical. The "investigations" go hand in hand, and the totality of the circumstances (confirmed by Plaintiff's *own testimony*) establishes that the issues Plaintiff asserts he "complained" about were handled and addressed in Plaintiff's capacity as a City police officer and <u>not</u> as a private citizen. See [DE 57] at pg. 11 ("…and because [Plaintiff] complained about matters outside of public concern…"). *Garcetti* and *Lane* control. As Plaintiff did not engage in protected speech under the First Amendment, the City is entitled to judgment on Count II.[4]

### 3. September 2021 and January 2022

Chief Barreira directed Plaintiff to perform his administrative duties at home as a direct result of Plaintiff's September 1, 2021, taser incident while the incident was investigated. [DE 52] at pg. 10. The City argued in its motion for summary judgment that Plaintiff being sent home in September 2021 following the September 1, 2021, taser incident was not an adverse employment action– regardless of whether Plaintiff classifies the event as a "suspension." *Id.* The City cited two recent opinions authored by the Eleventh Circuit Court of Appeals in 2021 for the proposition that a paid suspension does <u>not</u> amount to an adverse employment action: *Davis v. Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021) and *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1379 (11th Cir. 2021). Plaintiff tellingly ignored <u>both</u> controlling and applicable authorities

---

[4] Briefly, because the "argument" merits minimal response, Plaintiff asserts that Chief Barreira's declaration should be disregarded as a "sham" and that Chief Barreira "committed perjury." [DE 57] at pgs. 4-5. That is nonsensical. There is nothing conflicting or contradictory between Chief Barreira's declaration and deposition testimony that he gave over the course of two depositions. Memories can be refreshed and there is nothing otherwise inconsistent regarding Chief Barreira's testimony and a claimed self-serving and rhetorical "epiphany." [DE 57] at pg. 5.

to the case *sub judice*.[5] Without any dispute, the City's decision to relieve Plaintiff of duty "with pay" in September 2021 (regardless of whether it is classified as a suspension or relief of duty) is <u>not</u> adverse employment action. [DE 57] at pg. 11; *Davis; Bell*.[6]

The Response further contends that the City "singled [Plaintiff] out by relieving him of duty *without pay* after being accused by a fellow officer of a batter [sic]…" [DE 57] at pg. 12. The Response then confusingly argues, in the next paragraph, that the City "maintains that [Plaintiff] was not suspended with pay-or that this suspension- did not constitute adverse action….*Id.* These muddled characterizations are <u>wrong</u> and otherwise misleading as they comingle two separate occurrences.

First, because the Response fails to clearly articulate or recognize as much, former City Manager John Pate demoted Plaintiff to Captain in January 2022 after criminal charges were brought against Plaintiff. [DE 53] at ¶¶ 51-52. Plaintiff does not (because he cannot) dispute this. [DE 58] at ¶¶ 51-52. Contrary to any insinuation made within the Response, the City never took the position that Plaintiff's January 2022 demotion was not an adverse employment action. Indeed, a demotion certainly can be adverse action, but in this case, Plaintiff was demoted for **admitted** and **undisputed** reasons that Plaintiff cannot otherwise establish are pretextual, i.e. criminal charges being brought against him in January 2022.

Chief Barriera's instruction to Plaintiff to work from home in September 2021 pending the investigation into Plaintiff tasering a fellow officer was separate and apart from Pate demoting

---

[5] Pages 11-12 of the Response muddles and confuses numerous discrete issues regarding protected activity and claimed adverse action taken at various alleged times and by different decisionmakers. The City does its best to comprehend the arguments and succinctly reply.

[6] Contrary to Plaintiff's blanket (and unsupported) assertions, nothing regarding the City's corporate representative testimony "conflicted" with Chief Barreira's testimony or otherwise established "pretext." [DE 57] at pg. 12.

Plaintiff in January 2022. Two different scenarios. Two different decisionmakers. Indeed, Chief Barreira did not even work for the City in January 2022. [DE 53] at ¶ 39. Plaintiff's muddling of the "without pay" and "with pay" scenarios unnecessarily and improperly confuses the issues before the Court and mischaracterizes the City's clearly articulated summary judgment arguments.

### 4. No causal connection

Even if Chief Barreira's instruction to Plaintiff to work from home in September 2021 was deemed adverse action (it is not), the Response confirms the omission of record evidence to establish a **causal connection** between Plaintiff's claimed protected activity and Plaintiff being sent home as a result of the September 1, 2021, taser incident.

Plaintiff's attempt to "dispute" the City's material facts on this critical issue (of causation) is futile. C.f. [DE 53] at ¶¶ 35-37; [DE 58] at ¶¶ 35-37. None of Plaintiff's "argument" or cited testimony relates in any way to **causation**. *Id.* Instead, Plaintiff focuses solely on whether Plaintiff being "relieved of duty" was an adverse employment action– a completely separate element of a retaliation claim. Indeed, the Response wholly fails to substantively rebut the City's arguments that no causal connection exists between Plaintiff's claimed "complaints" and being sent home to work a mere nine days after the taser incident. [DE 52], generally.[7]

Plaintiff's attempt to diffuse and diminish his own dispositive testimony by citing to others' speculative testimony regarding a claimed [unspecified] link between Plaintiff's "complaints about financial mismanagement" and Chief Barreira's "retaliatory actions" is otherwise insufficient to defeat the City's entitlement to summary judgment on Count II. See, e.g. [DE 57] at pgs. 13-14.

---

[7] The Response's assertion that the City "does not offer any explanation for why it relieved [Plaintiff] of duty…" is patently **false**. See, e.g. [DE 52] at pg. 10. The City relieved Plaintiff of duty with pay because he was accused of tasing a fellow police officer in the workplace. *Id. T*hat occurrence was unprecedented.

The generalized response to the City's arguments confirm Plaintiff's inability to meet his summary judgment burden of establishing the requisite causal connection between claimed protected activity and Chief Barreira's instruction to Plaintiff to work from home as a direct result of the September 1, 2021, taser incident. *Id.*[8]

### 5. *Pickering* warrants entry of judgment in the City's favor on Count II

The City proffered a comprehensive *Pickering* analysis as part of its summary judgment motion. [DE 52] at pgs. 11-13. The Response does not substantively rebut the City's analysis. Instead, the Response merely asserts that there was "no need to send Plaintiff home" because the taser incident was "unique." [DE 57] at pg. 16. That is the extent of Plaintiff's "rebuttal."

As set forth within the City's motion and otherwise supported by record evidence, Chief Barriera sent Plaintiff home in September 2021 because of the seriousness of the taser allegations and the pendency of the investigation. [DE 52] at pg. 12-13. The City's need to secure its police department's discipline, respect, trust, and reputation outweighed any purported free speech rights claimed by Plaintiff. *Id.* In the end, Plaintiff cannot establish that any purported free speech rights outweighed the City's interests in effectively and efficiently managing the operations of its police department. The City is entitled to judgment on Count II.

### C. No whistleblower claim (Count III)

#### 1. Plaintiff's explicit concession

As a threshold matter, Plaintiff explicitly acknowledges that he cannot maintain a valid whistleblower claim premised on his claimed September 28, 2021, whistleblower letter . [DE 57]

---

[8] Of course, no causal connection can be established between Plaintiff's January 2022 demotion (effectuated by John Pate) and Plaintiff's claimed engagement in protected activity when Plaintiff has explicitly admitted the reason for his demotion (the criminal charge). [DE 53] at ¶¶ 51-52; [DE 58] at ¶¶ 51-52. The record is otherwise devoid of evidence establishing any retaliatory motive or animus on the part of Pate.

at pg. 3 ("…[Plaintiff] **agrees that he cannot pursue a claim** under Fla. Stat. § 112.3187 as a result of the letter sent by his counsel…") (emphasis added); see also [DE 58] at ¶¶ 45-50 (conceding Plaintiff's inability to establish a valid whistleblower claim premised on Plaintiff's claimed September 28, 2021, whistleblower letter by failing to dispute the City's material facts on this claim). The City is entitled to judgment on Count III.

### 2. Plaintiff's improper attempt to amend the whistleblower claim

Recognizing the failed avenue to establish a valid whistleblower claim, Plaintiff now asserts for the first time in response to the City's motion for summary judgment that the "crux" of the whistleblower claim is premised on a claimed alleged "refusal" to participate in "Mr. Barreira's gross management and financial waste of taxpayer funds." [DE 57] at pgs. 16-17. This "theory" was never advanced or pled in the operative complaint. [DE 37], Count III.

Plaintiff's attempt to amend the whistleblower claim by manufacturing a new whistleblower theory in response to the City's motion for summary judgment is improper and should be rejected. See, e.g., *Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1314-15 (11th Cir. 2004) (explaining how plaintiffs may not amend their complaints through argument in an opposition to a motion for summary judgment and that defendants are not required to infer all possible claims that could arise out of facts set forth in the complaint). It is Plaintiff, not the City, who is "present[ing] new argument thereon at this late juncture to sandbag." [DE 57] at pg. 18.

Notwithstanding Plaintiff's improper attempt to pivot towards a new whistleblower theory, the record is devoid of Plaintiff "refusing" to participate in anything as defined by Fla. Stat. § 112.3187. The record is devoid of Chief Barriera asking Plaintiff to do anything illegal (because that never happened). Plaintiff's continued blanket assertions that he lodged alleged complaints of

"gross management and gross financial waste by [Chief] Barreira" [9] do not constitute a catchall "refusal" to participate in any adverse action prohibited…" under Fla. Stat. § 112.3187 as attempted to be insinuated by the Response. [DE 57] at pgs. 17-18. The City is entitled to judgment on Count III.

### 3. No "but-for" causation regardless

What's more, the Response fails to proffer any record evidence to establish any causal connection (let alone "but-for" causation) between any claimed protected activity and purported subsequent adverse employment action. Regardless of any whistleblower theory now asserted by Plaintiff. There is <u>no</u> record evidence sufficient to establish that any claimed whistleblower "complaint" was the but-for cause of any claimed adverse action. The Response's failure to address but-for causation speaks for itself. The City is entitled to judgment on Count III.

### 4. No pretext

Likewise, the Response solely focuses on protected activity Plaintiff (now) claims to have engaged in under Florida's public Whistleblower's Act. [DE 57] at pgs. 16-18. The Response does <u>not</u> in any manner substantively address the City's remaining whistleblower arguments and analysis. [DE 52] at pgs. 19-20. Plaintiff's omission of any substantive rebuttal to the City's pretext analysis is telling and otherwise dispositive. By failing to address the City's pretext arguments, Plaintiff has implicitly conceded that the City is entitled to judgment on Count III. In the end, there is <u>no</u> record evidence that the City's reasons for taking any claimed adverse action against Plaintiff were pretextual.

---

[9] This "argument" crystalizes Plaintiff's improper attempts to muddle Counts II and III throughout the Response. The "throw everything against the wall and see what sticks approach" should be rejected.

WHEREFORE, Defendant, CITY OF OPA-LOCKA, respectfully requests the entry of an order granting summary judgment in its favor; the entry of final judgment upon that order; and such further relief as this Court deems just and proper.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of August 2023, I electronically filed the foregoing document with the Clerk of Court by using the CM/ECF system or by email to all parties. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail to any non-CM/ECF participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by CM/ECF to any and all active CM/ECF participants.

BY: */s/Christopher J. Stearns*
CHRISTOPHER J. STEARNS
Florida Bar No.: 557870

*/s/Jonathan H. Railey*
JONATHAN H. RAILEY
Florida Bar No.: 111717

JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone:   (954) 463-0100
Facsimile:   (954) 463-2444
stearns@jambg.com / berens@jambg.com
railey@jambg.com / garrido@jambg.com

**Attorneys for City of Opa-Locka**

## **SERVICE LIST**

**BRIAN H. POLLOCK, ESQ.**
FAIRLAW FIRM
**Attorney for Plaintiff**
135 San Lorenzo Ave.
Suite 770
Coral Gables, FL 33146
(305) 230-4884 (Phone)
brian@fairlawattorney.com

**CHRISTOPHER J. STEARNS, ESQ.**
**JONATHAN H. RAILEY, ESQ.**
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, PA
**Attorneys for Defendants**
2455 E. Sunrise Blvd., Suite 1000
Fort Lauderdale, FL 33304
stearns@jambg.com / young@Jambg.com
railey@jambg.com / garrido@jambg.com
(954) 463-0100 (Phone)
(954) 463-2444 (Fax)